# John Tozer et al. *v.* John Jackson, Sr., et al., Appellants.

[Marked to be reported.]

*Will—Devise—Testamentary paper—Gift—Evidence.*

Decedent committed suicide in his bedroom. Immediately after his death there was discovered lying in a conspicuous place on top of a trunk near his bed an envelope, unsealed, with the name " John Jackson " written on the outside, and inside the envelope was the following paper: " High James Rogers do give to John Jackson Sr., my property known as Pen argyl Hotel and the land adjoining in Pen argyl Northampton County P. A. James Rogers." *Held,* that the paper was not a gift intended to take effect in decedent's lifetime, but a will intended to take effect upon his death.

*Ejectment—Issue devisavit vel non—Record—Practice.*

The above paper was admitted to probate, and subsequently the court awarded an issue to determine whether it was decedent's will. At the request of the proponent the court submitted to the jury the question whether the intent of the decedent was that the paper should only take effect after his death. The jury found that the paper was not intended as a will. A judgment on the verdict was sustained by the Supreme Court, as there was no question raised upon which they could reverse it, the court being of the opinion, however, that the paper was testamentary in character. No return was made to the orphans' court from the common pleas, and no final decree was made by the orphans' court vacating the probate. Subsequently the contestants brought an action of ejectment against the proponent. In this action the court below admitted in evidence the record of the common pleas, notwithstanding the absence of a final decree by the orphans' court, on the ground that they would consider that as done which ought to be done. *Held,* that the evidence was improperly admitted, as

the court was not authorized to assume that the probate had been annulled, since that could only be done by a formal decree of the orphans' court.

In the above case, as the view of the Supreme Court on the whole case on its merits would prevent the orphans' court from ever making a decree vacating the probate, the Supreme Court, in reversing the judgment for plaintiffs in the ejectment, did not deem it necessary to send the record back for the purpose of another trial, and accordingly refused a new venire.

Argued March 6, 1894.    Appeal, No. 138, Jan. T., 1894, by defendant and terre tenant, from judgment of C. P. Northampton Co., June T., 1893, No. 13, on verdict for plaintiffs.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Ejectment against defendant and terre tenant.    Before SCHUYLER, P. J.

The facts appear by the opinion of the Supreme Court.

At the trial plaintiffs offered in evidence the record of the appeal of John Jackson in the estate of James Rogers, deceased; the record of the orphans' court, including the remittitur from the Supreme Court, for the purpose of proving that the question of heirship of John Tozer had been adjudicated and finally determined.

The record is objected to because it is not evidence in this action of ejectment, which is in the name of John Tozer, James Tozer and Henry Tozer, and because it is an adjudication only of John Tozer's right as a petitioner to the orphans' court on an appeal from the probate of the will of James Rogers as a person interested under the act of assembly; that it is no adjudication of any fact that would bind the defendants in this action as a final decree upon the question of their title to the property in dispute ; that it was a determination of but a preliminary question, and that it is not proposed to follow up the offer by any final decree setting aside or invalidating the will of James Rogers, deceased; and that the preliminary issue determining the standing of John Tozer to appeal from the probate of the register was not subject to the trial by jury unless an issue had therefor been directed, and the title of the property cannot be affected by that decree ; and generally as incompetent and irrelevant.

Objection overruled, evidence admitted and exception. [4]

Plaintiffs offered in evidence the record in the feigned issue in the common pleas for the purpose of showing that the issue directed by the orphans' court was found in favor of the present plaintiff, John Tozer, and was.submitted to a jury and passed upon, and in the final determination in the Supreme Court was adjudged not to be the will of James Rogers, deceased, together with the stenographer's transcript of the notes of testimony and evidence in the case.

Objected to, as not rebutting testimony on part of plaintiffs, because it is not coupled with a proposition to show any decree of the orphans' court (which alone has jurisdiction of the question of probate of last wills and testaments) that the said probate of the register of the paper offered in evidence by the defendants has been vacated, annulled or set aside; that the verdict in the common pleas and the record which is now offered in evidence is but the determination of a question of fact that was sent to the common pleas for trial from the orphans' court; that there had been no certificate from the common pleas; that it is not proposed by plaintiffs to follow up the record by proof of any return made to the orphans' court of the precept issued by that court to the common pleas, nor of any decree in the orphans' court sustaining the appeal of John Tozer from the register's probate; that the controversy in the common pleas was not between the same parties as the parties to the present action, as an inspection of the record shows; that the judgment offered in evidence from the common pleas, as the record shows, was to determine a question of law and not a question of fact under the act of assembly, and that therefore the common pleas had no jurisdiction to determine the said question.

By the Court: I think the certificate and subsequent action of the orphans' court are both mere matters of form, and that for the purpose of this case we will consider that as done which ought to have been done. There is no question that there ought to have been a certificate from the common pleas to the orphans' court, but it seems to me that that is a mere matter of form. It also ought to appear that there was a decree of the orphans' court, but that, as I understand the law, is also immaterial. We will overrule the objection and give the defendants a bill. [5]

Plaintiffs' points were as follows :

" 1. The uncontradicted testimony being that John Tozer is the legally adjudicated heir of James Tozer, deceased, and that James and Henry Tozer are his brothers ; and further that James Tozer, deceased, died seized of the property in dispute, intestate ; the plaintiffs being heirs at law of the said decedent, the verdict must be for the plaintiffs." Affirmed. [7]

2. Request for binding instruction. Affirmed. [6, 8]

Binding instruction for defendants was refused. [9]

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* were (1–3) immaterial rulings ; (4, 5) rulings as above ; (6–9) instructions ; quoting instructions and bills of exception, and referring to evidence in appendix.

*H. W. Scott*, for appellants.—If this case was res adjudicata, then plaintiff's title to the land was judicially ascertained, not in this action of ejectment to which by law such jurisdiction is committed, but in the orphans' court by a collateral proceeding, without a jury. Title cannot be so tried : Coal Co. v. Snowden, 42 Pa. 491.

To disturb the effect of the probate, it is necessary that plaintiffs should produce a judgment or decree of some court of competent jurisdiction setting it aside : Black, Judg. § 278 ; act of March 15, 1832, § 13, P. L. 138 ; McCay v. Clayton, 119 Pa. 135.

If only a question of law was involved, the trial in the common pleas was beyond its jurisdiction : Scranton School Dist. v. Simpson, 25 W. N. 518 ; Ruoff's Ap., 26 Pa. 219. If the court has no jurisdiction, it is of no consequence that the proceedings have been formally conducted, for they are coram non judice : Wall v. Wall, 123 Pa. 553. And being so, if the orphans' court had been asked for a decree invalidating the will, the decision of this court upon the very paper would have required a decree sustaining it.

The judgment in the common pleas is only interlocutory, even if within its jurisdiction, and is altogether no more effectual as a bar to the effect of probate, without further action, than a judgment before a justice of the peace upon the same subject-matter : Saylor v. Hicks, 36 Pa. 392 ; Black, Judg. § 509.

The probate is conclusive upon the title devised and it is not to be impeached by collateral attack: McCort's Ap., 98 Pa. 33; Cochran v. Young, 104 Pa. 333; Broe v. Boyle, 108 Pa. 76.

A judgment, sentence or decree of a court is conclusive evidence of every fact upon which it must necessarily have been founded: Hamner v. Griffith's Adm'rs, 1 Grant, 193; Hobart. v. McCoy, 3 Pa. 419; Marsh v. Pier, 4 Rawle, 273.

The paper was intended as a parol gift: McKinney v. Rhoads, 5 Watts, 343; Dayton v. Newman, 19 Pa. 194; Wilt v. Franklin, 1 Bin. 502; Stinger v. Com., 26 Pa. 422; Stephens v. Huss,. 54 Pa. 20; Stephens v. Rinehart, 72 Pa. 434; Blight v. Schenck, 3 Pa. 290; Miller v. Bomberger, 76 Pa. 78; Shannon v. Newton, 132 Pa. 382; Putnam v. Tyler, 117 Pa. 588; Syler v. Eckhart, 1 Bin. 378; Sower v. Weaver, 84 Pa. 262; Stewart v. Stewart, 3 Watts 253; Harris v. Richey, 56 Pa. 395; Miller v. Hartle, 53 Pa. 108; Tuit v. Smith, 137 Pa. 35; Young v. Glendenning, 6 Watts, 510; Lewis v. Baker, 151 Pa. 529.

*T. F. Emmens*, for appellees.—The act of assembly gives no conclusive character to this paper-writing. It gives conclusive character to the probate of a will. A jury has determined that this paper is not a will. That verdict has been sustained by this court.

This paper lacks an essential element of an executed parol. gift. It was never delivered to the donee or to any one for him. Therefore it was not an executed contract: Trough's Est., 75 Pa. 117; Campbell's Est., 7 Pa. 100; Withers v. Weaver, 10 Pa. 391; Kidder v. Kidder, 33 Pa. 268; Linsenbigler· v. Gourley, 56 Pa. 166; Pringle v. Pringle, 59 Pa. 281; Horner's Ap., 2 Penny. 289.

The finding of this paper-writing is evidence of the intention of the donor to give at the time it was written. But the fact that he did not deliver it is some evidence that he changed that intention. The proof is positive that the writing was never delivered and delivery is essential: Russell's Ap., 75 Pa. 269; Wallaston v. Tribe, L. R. 9 Eq. 44; Coutts v. Acworth, L. R. 8 Eq. 558; Hall v. Hall, L. R. 14 Eq. 365; May on Voluntary Conveyance, 451; 2 Wash. on Real Prop. 393; 2: Bl. Com. 331; Osborn v. Osborn, 29 N. J. Eq. 385; Critch-

field v. Critchfield, 24 Pa. 100; Durand's Ap., 116 Pa. 93; Scott v. Lauman, 104 Pa. 593; Waynesburg College's Ap., 111 Pa. 130.

OPINION BY MR. JUSTICE GREEN, Oct. 22, 1894:

When this case was here before (154 Pa. 223) it was an issue devisavit vel non. The two questions raised by the proceedings were testamentary capacity and undue influence. Neither of these questions was " submitted to the jury or touched by the verdict," and we so declared in the opinion then delivered. We further said, " On the other hand, the legal effect of the alleged testamentary paper was submitted to the jury with the assent of both parties, and as a consequence they have found that a paper aptly disposing of the entire estate of James Rogers and found exposed conspicuously in the room in which he committed suicide, was intended to take effect, two weeks prior to its exhibition, as an absolute gift, notwithstanding the fact that he had kept it in his own possession until the hour of his death and then for the first time placed it where those who discovered it could not fail to discover his•written declaration of his wishes in regard to his property. While we are constrained to affirm this case upon the questions presented by the record, we do not wish to be understood as assenting to the practice of submitting the construction of such a paper as that now before us to a jury."

The only reason why we affirmed the judgment in that case was that there was no question raised upon which we could reverse it. The plaintiff in the issue, who is the defendant in this action, asked the court to instruct the jury that if they believed that James "intended the paper· offered as his will to take effect only after his death, the verdict must be for the plaintiff." This point was affirmed and the case was therefore tried upon the question of fact whether the intent of James Rogers was that the paper should only take effect after his death. As this was at the instance and request of the plaintiff in the issue, we could not reverse the court below for affirming his point and charging the jury as they were requested. And· in that condition of the record we could not reverse for the refusal of the court below to give a binding instruction to find for the plaintiff, as such an instruction would have been entirely inconsis-

tent with the instruction to find according to the intent as to the time the instrument should take effect. We were of opinion then, as we are now, that the paper writing in question is testamentary on its face and in view of the circumstances in which it was found, and that it would have been the duty of the court below to so instruct the jury if they had been asked to do so.

The only material question worthy of present consideration is whether, in the state of the record as we find it in this action, the request of the defendant for a binding instruction to find in his favor should have been granted.

It is useless to discuss the question whether the paper can be sustained as a present gift of the land. To sustain that view it would be essential to determine that the gift was complete in the lifetime of the donor. But that is impossible because the instrument was retained in his possession up to the moment of his death and therefore it was never delivered. Had it been a regular deed in fee simple for the land, properly signed and executed in all respects, and duly acknowledged as such, it could not have passed any title because it was never delivered, and without delivery it was utterly ineffective. Taking possession and making improvements after the death of the donor could in no manner help such a title. That may do in support of a parol sale in certain circumstances, or a parol gift followed by possession, but this was not a parol sale in any point of view, and it was not a parol gift for the reasons already stated.

Recurring then to the question whether the defendant was entitled to a binding instruction in his favor, we have to remark that he was not hampered by any contradictory request of his own to send the case to the jury on a question of intent. It is true also that he did not ask for a binding instruction that the paper was a will, but he did ask that on all the evidence he was entitled to a verdict. Now this paper was in evidence. It is a part of the record. It purports to be a testament giving to the defendant the title to the property in question. The action is an ejectment for the recovery of the land. If this paper conveys the land to the defendant by a valid testament the plaintiff has no case. The learned court below was in error in saying that this court had decided in the

former case that the paper was null and void as a will. We did not make any such decision nor did we intend to do so. On the contrary we intimated very strongly that it was a valid will and we only abstained from deciding it because the question in that form had not been raised on the record.

But on the trial of the present action the question of the character and legal effect of this instrument necessarily arises, because if it is a valid will the defendant has the title and the plaintiff does not have it. The interpretation of the paper is undoubtedly for the court. In form and in substance it is perfectly good as a testament. It contains disposing language, language which in its primary and essential meaning purports to pass away the title of the owner to another. " High James Rogers do give to John Jackson Sr., my property known as Pen argyl Hotel and the land adjoining in Pen argyl in Northampton County P. A.    James Rogers."

How could there be any more direct, emphatic and positive expression of a purpose on the part of James Rogers to give the property described to John Jackson, Sr. ? It is not possible. There is not the least uncertainty or ambiguity of meaning in these words, and no legitimate contention can arise upon that aspect of the subject. The property is adequately described, a definite person as donee is expressly named, the donor names himself both in the body of the paper and in his signature, and the words employed are absolutely and with conclusive force apt words of gift of the entire title, by the donor to the donee. On this whole subject there is nothing to discuss. The interpretation of such a paper is exclusively for the court. In no circumstances can a jury be permitted to deal with it. So apparent and so manifest is the meaning and legal effect of the paper that it is not seriously questioned. Why then does it not have operation ? It is on this record, it is a paper in the case, something must be done with it. The learned court below treated it only as raising a question of a present gift in the lifetime of the testator, and very properly decided it could have no effect as such an instrument. But the question remains, why is it not operative as a testament ? The learned court below thought that question was adjudged by the decision of this court in the feigned issue. But that, as we have seen, was a mistaken view of that decision. And now the testamentary question remains and must be disposed of.

There is but one allegation that has at any time been set up against the testamentary character of the paper, and that is, that it may have been intended only as a gift in the lifetime of the donor, and if so it could not be operative as a testament. Prima facie that is not its character because, being land, a deed would have been the appropriate instrument to convey the title. The language employed is the language of a will, not of a deed. It would be naturally, therefore, the duty of the plaintiff who claims against it as a will to rebut the presumption arising from the language of the instrument. But whether it is his duty or not, the argument can find no support except in a consideration of the circumstances in which the paper was found. While it may be very possible, in a given case, that there might be circumstances which would give rise to a question whether such a paper was only intended to operate in the present as a gift, and not in the future as a testament, we think that the circumstances in this case quite preclude any such inference.

The paper was dated August 17th, 1887. The deceased, James Rogers, died on September 6th, 1887. He came to his death by an act of suicide committed in his own bedroom. He was found, very soon after he shot himself, lying on his bed and dead, the body still being warm. The man who found him went out for policemen who immediately came to the room and examined the body and the furniture and other surroundings. While they were doing this there was discovered an envelope, unsealed, with the name " John Jackson " written on the outside, and on the inside was the paper in question. The envelope with the paper in it, was lying on the top of a trunk which stood on the floor, at the foot of the bed. There was no dispute about these facts.

It is manifest, therefore, that, at the moment of the death of James Rogers, the paper was in his possession, and that fact alone, conclusively disproves the theory that he intended it to take effect in his lifetime. He had never delivered it, there was not a particle of evidence to that effect, and it was therefore inoperative as a gift in præsenti. In addition to this the paper was exposed conspicuously, lying on top of the trunk where it could readily be seen. As he was alone in his room immediately prior to his death, it must be assumed that he

placed it there himself.   He then destroyed his life.   These circumstances are only consistent with the theory that, so far as the intention of the deceased was concerned, it was his purpose that the gift of the property should become effective after his death.   In truth the undisputed facts entirely exclude any other inference,

In the case of Cock v. Cook, L. Rep. 1 Prob. and Div. 241, the following paper was offered for probate :

" I wish My Sister, Louisa Cook of 104 York Road, Lambeth to have my Schering (Charing) Cross bank book for her own use

        " Dec. 7 1865                    Sarah Jenkins
" Witness—Sarah Hamon
        Joseph Sellick "

It was held that this was a testamentary paper intended to take effect after the death of the testatrix, although she did not die until some time later, and tried to get the money out of bank before her death.   The court said : " The expression, ' I wish my sister to have,' etc., appears to me to imply, ' I wish her to have after my death,' because when she wrote those words she was dangerously ill and did not expect to live, and if she had merely wished to make her sister a present she would not have taken the trouble to write anything at all, but would simply have handed over the bank book to her, as she afterwards did the stock receipts. . . . It is undoubted law that whatever may be the form of a duly executed instrument, if the person executing it intends that it shall not take effect until after his death, and it is dependent upon his death for its vigor and effect, it is testamentary. . . . The very nature of the transaction points to her intention that the paper should only take effect in the event of her death, an event which both she and her sister considered certain and imminent."

With how much greater force does this reasoning apply to the facts of the present case.   Here the deceased, instead of destroying the paper as he would necessarily have done if he did not intend it to become operative, preserves it, incloses it in an envelope, addresses the envelope to the person who is named as donee, and places it in a conspicuous position where it would certainly be discovered, and then takes his life.   It is impossible to conceive of a stronger or more convincing act of

testamentary purpose and intent. There is, of necessity, no room for any other inference. It follows hence that there is nothing in the facts in evidence to detract from the natural testamentary meaning of the words, but, on the contrary, conclusive proof that such was the meaning both of the words and acts of the decedent. The facts being entirely undisputed and without the least contradiction, it was the plain duty of the court below, as it is our duty, to pass upon them and to decide upon their effect.

In the case of Frew v. Clarke, 80 Pa. 170, Mr. Justice MER-CUR, delivering the opinion of the court, said: " An instrument in any form, whether a deed poll or indenture, if the obvious purpose is not to take place till after the death of the person making it, shall operate as a will: Habergham v. Vincent, 2 Ves. Jr. 204. It may be by an indorsement on a note: Hunt v. Hunt, 4 N. H. 434; or by letter: Morrell v. Dickey, 1 John. Ch. 153. Whatever be the form of the instrument, if it vests no present interest, but only directs what is to be done after the death of the maker, it is testamentary: Turner v. Scott, 1 P. F. Smith, 126. The essence of the definition is that it is a disposition to take effect after death: Redfield on Wills, 5; Turner v. Scott, supra. Nor does it matter that the person intended to make a note instead of a will. If he used language which the law holds to be testamentary, his intention is to be gathered from the legal import of the words he employed: Id. No form of words is necessary to make a valid will. The form of the instrument is immaterial, if its substance is testamentary: Patterson v. English, 21 P. F. S. 458; see also Rose v. Quick, 6 Casey, 225; Frederick's Appeal, 2 P. F. Smith, 338."

In Schad's Appeal, 88 Pa. 111, we held an assignment of a policy of insurance for $4,000 by a husband to his wife after his death when she could do with it as she pleased, to be a will, such being the apparent intent of the party.

In Wilson v. Van Leer, 103 Pa. 600, Mr. Justice PAXSON said, " The form of the instrument is immaterial if its substance is testamentary," citing several cases.

In Fosselman v. Elder, 98 Pa. 159, a sealed envelope was addressed thus: " Dear Bella, this is for you to open," in the handwriting of the alleged testatrix. The contents of the en-

velope were a promissory note for $2,000, and the following paper also in the handwriting of the testatrix: " Lewiston, Oct. 2, 1879. My wish is for you to draw this 2,000 dollars for your use should I die sudden. Elizabeth Fosselman." We held that the papers combined with the envelope constituted a valid will, although no person was named as donee in the paper, and no person was named by a full name on the envelope, and the envelope was a separate paper with no physical attachment to either of the other papers.

But it is useless to multiply authorities. All the foregoing were recognized in Knox's Estate, 131 Pa. 220, where some lead pencil notes with only the name " Harriet " attached were held to be a good will.

In the present case there is no difficulty growing out of a want of certainty of the parties, the subject-matter, apt language to convey the title from the donor to the donee or any other formal circumstance. In addition to this the instrument was in the possession of the testator to the moment of his death. One of the last acts of his life was to place it in such a position that it would immediately be discovered by those who found his body, and it was contained in an envelope addressed to the beneficiary named in the body of the paper as the grantee of the property. It never could have any effect in the lifetime of James Rogers. Its language proves conclusively that it was intended to have the effect of conveying the property described, to John Jackson, Sr., and it could not possibly have that effect until after the death of James Rogers, and the language used was entirely appropriate to that end. We are clearly and decidedly of the opinion that it is a good and valid testament and that under it John Jackson, Sr., takes the title in fee simple to the land described.

This much has been written for the purpose of expressing our views upon the main question whether the paper is a will or not. Of course to be effective as a will it must have been probated. In point of fact it was duly probated on the twelfth day of September, 1887, by the register of wills of Northampton county, and letters of administration c. t. a. were granted upon it, to Richard Jackson, Jr., who proceeded with the settlement of the estate of the deceased, and duly settled and filed his account as administrator. It was not until January, 1892, that

any steps were taken to call in question the probate of the will. At that time the petition of persons claiming to be the heirs of James Rogers was presented to the orphans' court, and a citation was prayed for against Richard Jackson, Jr., and John Jackson, Sr., to appear and show cause why an appeal should not be entertained, and why an issue of devisavit vel non should not be granted to the common pleas of Northampton county, to determine whether the paper was in the handwriting of the decedent, whether the paper was the legal declaration of the intention of the deceased which he willed to be performed after his death, whether the deceased was of sound mind at the execution of the instrument, and whether the paper was obtained by undue influence exerted by John Jackson, Sr., and others. Upon this petition a citation was awarded as prayed for, except as to the allegation of mental unsoundness. On June 13, 1892, the orphans' court directed a precept for an issue to the common pleas on the question whether the paper in controversy was, or was not, the last will and testament of James Rogers, but declined to award an issue as to mental unsoundness. The pleadings in the common pleas were in the usual form upon a wager, the question being, whether the paper writing was the last will and testament of James Rogers deceased. The case was tried before a jury and a verdict was found by the jury, that it was the wish of James Rogers that the paper should take effect at the time it was written. Afterwards, on the petition of the contestants, the court amended the verdict and entered a general verdict for the defendant. After that an appeal was taken to this court by the plaintiff in the issue, but the judgment was affirmed for the special reasons stated in the opinion. On the trial of the present action of ejectment the plaintiff offered in evidence the record of the feigned issue in the common pleas for the purpose of showing that the trial of the issue resulted in a verdict for the contestants and that the judgment was affirmed by the Supreme Court. To this it was objected that it was not proposed to show any final decree of the orphans' court, or that the probate granted by the register of wills had been vacated, annulled or set aside, that there was no certificate by the common pleas, nor any return made, to the orphans' court, nor was it proposed to prove that there was any decree of the orphans' court sustaining the appeal from the register's probate.

To these objections the learned court below replied that while there certainly ought to have been a certificate from the common pleas, and a decree of the orphans' court, these were both mere matters of form, and that they would consider that as done which ought to be done, and then overruled the objections and sealed a bill of exceptions for the defendant.

Thereupon the defendant offered and gave in evidence the full record of the proceedings in the orphans' court, which showed that there never was any final decree in the orphans' court, annulling the probate granted by the register.

We are clearly of opinion that it was error to admit in evidence the record of the common pleas without proof of a final decree of the orphans' court, and that upon proof, afterwards, by giving in evidence the whole record of the orphans' court, that there never was any final decree annulling the register's probate, the court below was not authorized to assume that the appeal from the probate had been sustained, or that the probate had been annulled. That could not be done except by a formal and actual decree of the orphans' court, and no such decree had ever been made.

In this state of the record it was error to instruct the jury to return a verdict for the plaintiff. A reversal of the judgment in the present action for these reasons would result in another trial after a final decree in the orphans' court annulling the probate. But as our views of the whole case on its merits would prevent the orphans' court from ever making such a decree, and in fact would require that court to disregard the record of the common pleas and enter a final judgment dismissing the appeal and confirming the probate of the register, it seems unnecessary to send the record back for the purpose of having another trial, which could never proceed for want of a decree vacating or annulling the probate. This being so we think it unnecessary to grant a new venire. We sustain the fourth, fifth, sixth, seventh, eighth, and ninth assignments of error. It is unnecessary to consider the others.

Judgment reversed.