Estate of Eliza J. Gaston, deceased.   Appeal of Mary J. Weller, Alonzo D. Weller, Ern K. Weller, and Ern K. Weller, Guardian of Paul Weller.

*Will—Form of will—Evidence.*

A writing was as follows:

" Dec 13      1893.

it my wish

                                       two
that Mrs. Weller the ∧ houses and
lots the ten acers for the four
boys Ern Frank Lue and Paul
Mrs Weller pay Eliz Mell 1500
Mr Shipply pay to Poty
Johnston 500 his debt and
Callie Abell 500 dollars
Mrs Shipply the other 500
Lucid 500 Chatty Uncel 500
My sisters 4000 apeace
Mary Abell Agness Snodgrass
Mary E. Anderson 1000
Ed Weller keeps what he got
Lone to pay Evert Abell 500
And keep the blance
                                   " E. J. GASTON."

It was written in lead pencil on the back of a printed notice, and was found after decedent's death in a bureau drawer.  It was dated two years prior to decedent's death, and at a time when decedent was of excellent business capacity, although illiterate.  It appeared that the property and persons mentioned in the writing could be identified by parol evidence.  *Held*, that the writing was a will, and that it was sufficiently definite to be carried into effect.

Argued Oct. 20, 1898.  Appeal, No. 170, Oct. T., 1898, by Mary J. Weller et al., from decree of O. C. Washington Co.,

Aug. T., 1895, No. 23, on appeal from register of wills. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from register of wills. Before McILVAINE, P. J. The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree overruling the action of the register in admitting will to probate.

*D. F. Patterson* and *R. W. Irwin*, for appellants.—The writing was a will: Patterson v. English, 71 Pa. 454; Cock v. Cooke, L. R. 1 P. & D. 241; Fosselman v. Elder, 98 Pa. 159; Tozer v. Jackson, 164 Pa. 373.

*T. F. Birch*, with him *J. W. Donnan, A. G. Braden* and *C. W. Campbell*, for appellee.—The essence of Blackstone's definition of a will is that it is a disposition to take effect after death: Turner v. Scott, 51 Pa. 126; 1 Redfield on Wills, *170; 1 Jarman on Wills, *25.

An examination of the paper in question in this case will show that it has none of the formalities of a will; there is a total absence of any expression in the paper showing that it is to take effect after death; it contains erasures and interlineations, and requires the insertion of material words to render it intelligible: Kelley v. Kelley, 25 Pa. 460; Plumstead's App., 4 S. & R. 545; Patterson v. English, 71 Pa. 454; Rose v. Quick, 30 Pa. 225; Knox's Est., 131 Pa. 220; Fosselman v. Elder, 98 Pa. 159; Frew v. Clarke, 80 Pa. 170; Sullivan's Est., 130 Pa. 342; Cock v. Cooke, L. R. 1 P. & D. 241; Tozer v. Jackson, 164 Pa. 373.

OPINION BY MR. JUSTICE DEAN, November 7, 1898:

A certain writing, a copy of which is herein given, was admitted to probate by the register of wills of Washington county as the last will and testament of Eliza J. Gaston; thereupon the heirs at law of the alleged testatrix petitioned the orphans' court for leave to appeal from the decision of the register for the following reasons: Because the said writing is not the last will and testament of Eliza J. Gaston, in that: (1) The pro-

visions thereof are vague, indefinite, uncertain and in some instances void; (2) it is written in lead pencil on the back of a printed notice to consumers from a gas company; contains erasures, alterations and interlineations in material parts, and was not among the valuable papers of deceased found after her death; (3) the writing does not contain any of the formal requisites of a will, and is not declared therein to be the will of Eliza J. Gaston; (4) the writing is not testamentary in character.

The court, by proper process, brought all the parties interested before it, and after full hearing, upon due consideration, being of opinion that the writing was not the last will and testament of Eliza J. Gaston, vacated and set aside the probate. From that decree, we have this appeal. The following is a copy of the alleged will, as nearly as the same can be made to appear in print:

> " Dec 13      1893
>
> it my wish
>
> two
>
> that Mrs. Weller the ∧ houses and
> lots the ten acers for the four
> boys Ern Frank Lue and Paul
> Mrs Weller pay Eliz Mell 1500
> Mr Shipply pay to Poty
> Johnston 500 his debt and
> Callie Abell 500 dollars
> Mrs Shipply the other 500
> Lucid 500 Chatty Uncel 500
> My sisters 4000 apeace
> Mary Abell Agness Snodgrass
> Mary E. Anderson 1000
> Ed Weller keeps what he got
> Lone to pay Evert Abell 500
> And keep the blance
>
> " E. J. Gaston."

Two questions are raised by this paper which must be answered before decree: 1. Is this a will? That is, was it intended to be a disposition of property to take effect after death? 2. Is it so certain and definite as to be capable of intelligent interpre-

tation and enforcement? Both questions must be answered in the affirmative, else the writing ought not to have been admitted to probate as a will. The form of the writing is of but little moment if a testamentary intention be apparent from the face of the paper. This paper, it is undisputed, is wholly in the handwriting of the deceased. She was seventy years of age, a widow, and childless; although somewhat illiterate, the testimony is, that she had excellent business capacity; had settled up, as administratrix, the estate of her husband who had died some years before, her account showing a balance of about $16,000; this, notwithstanding profuse gifts in her lifetime, had by accumulations reached the sum of about $20,000 at her death. Up to the date of her death her faculties were unimpaired; she was undoubtedly capable of determining on, and framing in her own mind, a testamentary disposition without the aid of counsel or advisers; whether from lack of education she was capable of so clearly expressing that intention in writing without assistance, as to leave no ground for litigation may be doubted. We are now only considering whether this writing on its face is testamentary. If instead of saying "it my wish" at the commencement of the writing, she had said, "it my will" there could have been no doubt of the intention that the disposition of her property following these words was to take effect after her death; the use of the word "will" preceding the gifts would have been conclusive as to the character of the instrument. But what distinction is there in fact between the signification of the words "will" and "wish," when used as preliminary to a schedule of property to be distributed among a number of beneficiaries. The "wish" of a testator as to a disposition expressed in writing and formally signed in his lifetime is just as effective as his "I will," or "I desire," or "I direct." His death makes the one just as imperative as the other. Then follows an allotment of all or nearly all of her estate among a large number of collateral relatives, and to an intimate personal friend and her children. She lived two years after making this writing; evidently she did not intend to denude herself of her property during her lifetime by making immediate gifts of which the paper was a memorandum, for she does nothing of the kind. The paper is found in her bureau drawer after her death, in which drawer were kept gas

receipts, on the back of one of which was the writing.  The place where it was found may have been considered by her a safe depository for the writing; in what particular or inappropriate place an elderly lady or, for that matter, a younger one, will put articles or writings of value is hard to even guess; as to Mrs. Gaston, concealment of the writing from interested parties may have been her principal object; if it was, she selected a kind of paper and a place which in all probability would effect her purpose, and yet, after her death, the paper would necessarily be discovered.  Another significant fact to indicate that this was more than a memorandum of property to be thereafter formally devised and bequeathed is that it is signed. There was another schedule not signed.  Being in her own handwriting, the writing in dispute would have been just as effective as a memorandum for a future will without signature, but it would not have been effective as a will, and we may fairly presume that to make it effective was the purpose of the signature.

In cases such as this precedents rarely afford much aid.  We start with the settled principle controlling the adjudication in all of them, namely, from the language of the paper itself, and the circumstances surrounding its execution and preservation, did the author of it intend the writing to be a disposition of his or her property to take effect after death?  The absence of sameness of expression and the wide variations in facts in nearly all cases compel a conclusion from the language and circumstances of the particular case.  It seems to us Knox's Estate, 131 Pa. 220, approaches nearer this paper in character than any of the others cited.  The writing in that case did not in words express that it was a will; it was in pencil on an ordinary sheet of letter paper, found in the deceased's portfolio, which last was in a cupboard in the room where she died; although there were many bequests, not a word announced the paper to be a last will.    In the beginning the testatrix says: " A few little things I would love to have done."  She does not sign it with her full name, but merely, " Harriett."  One of the directions is testamentary by inevitable inference: " Please have just my baptismal names on stones."  In the opinion of this Court, delivered by Justice MITCHELL, it is said: " The writing in question is clearly testamentary.  Although it does

not on its face purport to be a will, and in form is not a command but a request, addressed to no special person by name, . . . . it has the essential element of being a disposition of property to take effect after death." The same remarks apply with fully as much force to the paper before us.

Is the writing so definite as to be capable of interpretation and enforcement? It may be conceded that without additional knowledge to that disclosed in the writing distribution could not be made with certainty; but that is because the court, without evidence dehors the will, cannot identify the subject of the devise or bequest and the beneficiary. Everything was clear to the testatrix and, doubtless, the will is clear to the relatives and friends interested, notwithstanding the meagerness of description, for their familiarity with the property and the persons needs but a suggestion to identify both. Take the first devise, "Mrs. Weller the two houses and lots." It appears from the evidence that a Mrs. Weller had been reared in her house, married and had a family; a close intimacy like that of parent and child continued between them until the death of testatrix. Who doubts that this woman is the devisee? The testatrix owned two houses and lots only a few feet apart, in one of which testatrix lived, and in the other Mrs. Weller; they visited each other daily; thus pointing with reasonable certainty to the subject of the devise, and the evidence upon that question for final determination may be made absolutely certain. "The ten acres for the four boys, Ern, Frank, Lue and Paul." Mrs. Weller has four sons known by these names. Does any one doubt who are the devisees of the ten acre lot? And so of all the devises and legacies; parol evidence cannot be adduced to change or supply an intent not expressed, but may be heard to identify the property and legatee named by the testatrix. We think, on proper inquiry by the learned court below, the true interpretation of this will will be demonstrable, and the effect given it, that the testatrix intended by the words she used.

For the reasons given, the decree of the court below vacating and setting aside the probate is reversed, leaving to stand as originally entered the order of the register; costs to be paid out of the estate.