413 A.2d 681

**ESTATE of George Thomas LOGAN, Deceased.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 1979.

Decided April 30, 1980.

David Kanner, Philadelphia, for appellant.

Robert A. Naragon, Doylestown, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

NIX, Justice.

This is an appeal from the final decree of the Orphans' Court Division of the Court of Common Pleas of Bucks County affirming the refusal of the Register to admit to probate a document purported to be the last will of the decedent, George Thomas Logan. The basis of the court's action was its conclusion that the writing in question did not possess the requisite *animus testandi* which is an indispensable attribute of a will. It is this decision that we are now called upon to scrutinize.

The decedent died on September 4, 1974. On September 24, 1974, letters of administration were issued to Beatrice Fraser, the daughter of decedent. At his death, decedent was survived by Ms. Fraser and three sisters, Lillian Grundman, the proponent of the will in question, Frances Keating and Mildred Cole. The decedent lived with appellant for

approximately twenty-five (25) years. During most of that period, Beatrice was also a member of the household.

The document in question reads in its entirety as follows:

"I here buy sent [sic] my hand and seal to any one enterseted [sic] to my estate, that I give all my monies & estates to my sister Lillian Grundman *nee* Logan as bene-fecesitay [sic] to all an [sic] any.

Your truly

as ever

George T. Logan

The Same-Lillian Grundman

S. S. No. 198–03–7882 G.L."

The writing was handwritten and placed upon a sheet of paper torn from a notebook. The instrument was written by appellant, allegedly at the direction of the testator, and executed on January 19, 1957 (17 years prior to decedent's death.). Appellee also contended that the will was a forgery, but this issue was not reached by the court below in view of its decision in favor of appellee on other grounds.

In reaching her decision, the chancellor found that the writing was "not clearly non-testamentary and not clearly testamentary either." (Slip opinion pg. 15). She therefore determined that it was appropriate to consider extrinsic evidence and reached the ultimate conclusion that the document did not possess the requisite testamentary character. This conclusion was based upon the fact that the writing did not expressly provide for the disposition of decedent's property to take place at the time of his death. It is this judgment that caused the learned chancellor to fall into error.

In cases of this kind where a paper is proposed for probate and its testamentary character is challenged, it is incumbent upon the court, in the first instance, *to examine the paper, its form and its language, and determine there-from as a matter of law whether or not it shows testamentary intent with reasonable certainty.* If testamentary intent is satisfactorily demonstrated, then the paper must be ad-

mitted to probate. The difficult question is ascertaining that elusive quality of an intention to make a posthumous gift from a purported will. The landmark decision that set forth the approach to be followed where there is a question as to the testamentary character of the document offered for probate is *Kauffman's Will*, 365 Pa. 555, 76 A.2d 414 (1950). In *Kauffman's Will*, we stated:

"In all cases of this kind where a paper is proposed for probate and its testamentary character is denied, it becomes the duty of the Court in the first instance to examine the paper, its form and its language, and therefrom determine as a matter of law whether or not it shows testamentary intent with reasonable certainty. If testamentary intent is satisfactorily revealed from such an examination by the Court, the paper should be probated as a will.

On the other hand, if, from such examination, the paper is shown not to be a testamentary disposition, but is shown to be a document of another type, then it is not to be probated as a will. But, if, from such an examination, the Court should determine that a real doubt or real ambiguity exists, so that the paper offered for probate might or might not be testamentary, depending upon circumstances, then it has been held on numerous occasions by the Appellate Courts that the document presents an ambiguity which will permit the use of extrinsic evidence in aid of resolving the uncertain character of the paper. *McCune's Estate*, 265 Pa. 523 [109 A. 156]; *Wenz's Estate*, supra and authorities there collated [345 Pa. 393] on page 397, [29 A.2d 13]; Hutton on Wills pp. 132, 178." *Id.*, 365 Pa. at 558, 76 A.2d at 417.

■ Thus if the testamentary character of the writing in question can be determined with reasonable certainty from the four corners of the document, the Chancellor erred in resorting to extrinsic evidence to conclude that this instrument was not a testamentary disposition. Moreover, a writing need not assume any particular form or be couched in language technically appropriate to its testamentary char-

acter to take effect as a will. If the instrument is in writing and signed by the decedent at the end thereof and is an otherwise legal declaration of his intention which he wills to be performed after his death, it must be given effect as a will. *Zell's Estate*, 329 Pa. 312, 198 A. 76 (1938) and cases cited therein. In the instant case, the words "estate" and "beneficiary" coupled with the fact that the decedent was divesting himself of all of his worldly goods would clearly suggest a testamentary gift. However, the Chancellor properly notes that "the glaring omission is that there is no reference to the disposition of decedent's property to take effect at decedent's death." (Slip opinion pg. 15) A review of our cases in this area causes the "glow" to pale.

In *Sullivan's Estate*, 130 Pa. 342, 18 A. 1120 (1889) this Court was called upon to consider the following language:

"March the 4 Will my Properti [sic] to my wief [sic] my death

John Sullivan"

In affirming the decision that the writing exhibited testamentary character, this Court, in a per curiam opinion, tersely stated:

"This case does not require discussion. The decree is affirmed, and the appeal dismissed, at the cost of the appellant."

In *Gaston's Estate*, 188 Pa. 374, 41 A. 529 (1898) a signed writing, on the back of a bill in decedent's handwriting, stated: "December 13, 1893 it my wish" followed by a schedule of property to be distributed among specified persons was declared a will. There the Court obviously referring to its decision in *Sullivan's Estate*, supra, stated:

"If, instead of saying 'it my wish,' at the commencement of the writing, she had said, 'it my will,' there could have been no doubt of the intention that the disposition of her property following these words was to take effect after her death." *Id.*, 188 Pa. at 377, 41 A. at 529.

The Court then proceeded to conclude the difference in language did not change the testamentary character of the writing particularly noting that since she lived two (2) years

after executing the instrument "she did not intend to denude herself of her property during her lifetime, . . . " *Id.,* 188 Pa. at 377, 41 A. at 529.

In *Knox's Estate,* 131 Pa. 220, 18 A. 1021 (1890) the Court found "clearly testamentary" a letter left by the decedent, written in lead pencil and signed "Harriet." The Court focused upon the phrase "a few little things I would love to have done . . . " coupled with a direction "Please have just my baptismal names on stones."

In *Tozer v. Jackson,* 164 Pa. 373, 30 A. 400 (1894) the Court found the following language to be testamentary on its face:

"High James Rogers do give to John Jackson, Sr., my property known as . .. . "

In excluding the possibility of an interpreted *inter vivos* transfer the Court noted that the language employed was the language of a will, not a deed. Underlying the decision was the implicit belief that testator did not intend to divest himself of interest in this parcel of land during his lifetime.

In *Hengen's Estate,* 337 Pa. 547, 12 A.2d 119 (1940) the challenged document provided "I want Mamie to have my House . . . " In response to a contention that the absence of words indicating the gift was to pass upon the death of the decedent prevented the instrument from having testamentary capacity, this Court stated:

" . . . the words 'I want Mamie to have my House' necessarily must be taken to refer to a time in the future, to wit, after the death of the testatrix, . . . " *Id.,* 337 Pa. at 550, 12 A.2d at 120.

In *Kauffman's Estate,* supra, although the court below admitted extrinsic evidence to show the circumstances and conditions attendant upon signing the paper in issue, this Court strongly intimated that this testimony was unnecessary and that the writing on its face was prima facie the will of the decedent. The language there being considered was:

"dear bill

i want you to have farm

Annie Kaufman."

In the case at bar, the language was clearly reflective of a testamentary disposition. Additionally, it is quite inconceivable that the decedent would have allowed this document to remain in existence for seventeen (17) years without some further effort to complete the transfer, if he intended it to be an *inter vivos* gift. It is quite apparent that the learned Chancellor was disturbed about the authenticity of this document. The record before us suggests that this concern is not totally without foundation. Nonetheless, the Chancellor did not decide the question as to the alleged forgery but rather rested her decision on the ground that the document, authentic or not, did not possess the requisite testamentary character. For the reasons stated, we cannot accept that conclusion.

Accordingly, the decree is reversed and the cause is remanded for consideration and disposition of the remaining challenge to the purported will. Each party to bear own cost.

MANDERINO, J., did not participate in the decision of this case.