## In Re: Perry Estate

*James T. McHale,* for proponents.
*Joseph Marzzacco,* for contestant.

PENETAR, J., March 23, 1981—A hearing was held on February 5, 1981 to determine whether or not an instrument dated December 25, 1978 and admitted to probate in the Register of Wills office of Lackawanna County on January 16, 1979 was in fact the last will and testament of Thomas Perry, deceased, who died in the state of Florida on January 9, 1979. Oral arguments were heard after hearing on February 19, 1981. Briefs by counsel were filed. The court had previously dismissed preliminary objections to the new matter and counterclaim filed by Pearl Perry, widow, to a petition for declaratory judgment filed by two daughters of decedent. The matter before this court now is whether or not the instrument probated is a will, testamentary in character.

The instrument probated was a holographic letter written by decedent to his attorney, Frank DeSanto, Scranton, Pa. from Florida. At the hearing, attorney DeSanto, attorney for estate, testified that he represented Thomas Perry over a period of ten years; that in September or October, 1978, Mr. Perry was in his office and gave attorney handwritten notes listing properties he owned and other assets; that Mr. Perry told him that he was undecided as to how he wanted his property distributed; that Mr. Perry said he would send him a letter as to what he wanted in a will; that he then sent attorney subject letter dated December 25, 1978 which is instrument probated as a will; that Mr. Perry died before he (attorney) could draw up a will.

On cross-examination, Frank DeSanto testified that instrument probated was signed by decedent, "Thomas Perry"; that the notes to DeSanto left with him in September or October, 1978 in his office at time of visit were signed by decedent, "Tom."

Mary Metallo, daughter of decedent and petitioner, testified that her father had cancer; that she visited him in Florida in November, 1978; that he talked about his estate and told her he wanted it split three ways; that she was in Florida hospital with her father when he died in January, 1979.

Gloria Williams, daughter and petitioner, testified that her father supported her and transferred a house to her before he died; that when she visited him in Florida, he told her to arrange for his funeral in Scranton; that she would be taken care of.

The testimony heard was subject to a determination by the court as to whether or not extrinsic evidence can be or should be allowed to establish intent.

The court must first examine the document itself-its form, language and whether as a matter of law, it shows testamentary intent. Logan Estate, 489 Pa. 29, 413 A.2d 681(1980). If intent is satisfactorily demonstrated then the paper must be admitted to probate. But if after examination of paper, the court should determine that a real doubt or real ambiguity exists, so that the paper offered for probate might or might not be testamentary depending upon circumstances, then it has been held that extrinsic evidence may be used in aid of resolving the uncertain character of the paper. Kauffman Estate, 365 Pa. 555, 76 A.2d 414 (1950).

The probated instrument is a letter written by decedent to his attorney, dated December 25, 1978 and is as follows:

"Palm Beach Shores, Florida 33404
December 25, 1978

Dear Frank
Because my condition does not seem to improve and not known how long I still have to go I thought I better get this off my chest.

It would appear to me that there should be about 300,000 in savings Bonds and Insurance.

I believe this should be a three way split one one way for Pearl to share as she sees fit to with her family — One share for my daughter Mary Lou to share with her family one share for Gloria Jean to share with her family.

The House at 207 Branch Lanes-Palm Beach Shores has a value of app. $115,000 and carries a 12,000 mortgage at five and three-fourths percent.

The cost to operate is about 9000.00 a year.

As far as Lake Winola is concerned we have about 70,000 in it without furniture. I am sure Pearl will never live there year around but if she wants to she can but I think she should get a house or apartment move the furniture and sell the cottage. Therefore there would be no Hangovers.

Thomas Perry, 207 Bravado Lane
Palm Beach Shores, Florida 33404

Blackstone defined a will as "a legal declaration of one's intention which he wills to be performed after his death." McCune's Estate, 265 Pa. 523, 109 Atl. 156 (1920). There are four basic requirements for a valid will:

(a) Testamentary intent.

(b) A positive disposition of assets.

(c) Testamentary capacity.

(d) Execution in compliance with the requirements of the applicable statute which are:

(1) Shall be in writing.

(2) Shall be signed by testator.

(3) Shall be signed at the end thereof.

(4) Witnesses to identify signature.

PA. Probate & Interpretation of Wills, Secs. 3.8A & 3.12-Aker.

Proponents and contestants do not argue testamentary capacity or execution in compliance with the statute. The issues to be determined are whether (a) there was testamentary intent, and (b) whether there was a positive disposition of assets.

We are not, at this point, trying to construe a will. We are trying to determine whether or not the letter of decedent is his will.

First, without extrinsic evidence, does this letter show that it is testamentary in character and executed in the form required for a will? Contestants claim that it is a letter of instruction by the decedent to his attorney setting forth a desired disposition of his estate and not intended as a completed testamentary disposition.

A paper to be accepted as a will must be not only testamentary in form but it must be signed by a decedent with a testamentary intent. Wenz' Estate, 345 Pa. 393, 29 A.2d 13 (1942). The mere fact that the will was in the form of a letter does not affect the result. The test of whether or not a paper signed by a decedent was his will is: "Was it intended as a posthumous destination of the maker's property?" McCune Estate, supra. The animus testandi is an indispensible ingredient of a will. A precatory mode of gift is immaterial if the instrument is signed with testamentary intent. Cammarata Estate, 35 D.&C.2d 195 (1964). In the field of wills, the most difficult problem is the determination of whether a holographic paper is a will — and then, if a will, the interpretation of such a writing. The question of whether a testamentary disposition can be derived from the paper is exclusively for the court and an answer must be found within the four corners of the instrument itself. Extrinsic evidence of intent is inadmissible where a writing is clearly a will. Moore

Estate 443 Pa. 477, 277 A.2d 818 (1971). Although some words used might be directory and their meaning conjectured this does not destroy the testamentary character of the instrument if intent is apparent on its face. Obscurity of some sentences does not mean it should be set aside as a will. Zell's Estate 329 Pa. 312, 198 Atl. 76 (1938).

Now, to examine the writing in its fullness — the first paragraph; "Because my condition does not seem to improve and not known how long I still have to go I thought I better get this off my chest" certainly, clearly contemplates the death when he executed this paper. It does not contemplate something to be done in his lifetime. There is no direction or instruction to his lawyer to do anything. He wants to "get this (what is to follow) off my chest." That paragraph on its face shows he realizes he has a serious condition and may die soon. It indicates a present testamentary concern and related to his death. There is no doubt and no ambiguity in the first paragraph and therefore, no extrinsic evidence needed to explain it. In light of the whole instrument those words show a testamentary intention.

As to whether or not there is a positive disposition of assets, we again must read the whole paper of decedent. There is a clear consideration of all members of decedent's family — his wife and two daughters. There is identification of what appears to be his assets—bonds, insurance and two properties. We are not going to attempt to interpret the meaning of the words but the letter indicates some positive disposition.

"I believe this should be a 3 way split . . . . " "The House at 207 Branch Lane — Palm Beach . . . . I demand that this be sold." In light of the four corners of the instrument these are dispositive words.

It may be that the proceeds of sale must be split three ways as referred in paragraph preceding it, or it might be that the proceeds would go by way of intestacy. But these are matters for interpretation of a will which is not before us. We are now concerned with only whether or not it is a will. Decedent here has indicated what he was giving and to whom he was giving it. There is no doubt as to his intent. This letter standing alone, can take effect as a will. The precatory form is immaterial. The signature he used, "Thomas Perry" identifies and binds him to the writing. Knox Estate, 131 Pa. 220 (1890).

The fact that decedent addressed this letter to his attorney does not bear on his intention at the moment of execution when no words in the letter indicate instructions to the attorney.

The ultimate effect of the letter, if found to be a will, is not now before the court. Matters of distribution or construction are different from matters of probate. When the time comes for construction and interpretation we may find that it does not constitute an effective testamentary disposition. Burtt Will 353 Pa. 217, 44 A.2d 670 (1945). At that point we may have to declare an intestacy.

In this letter, we do not find any further or additional act or writing contemplated by the decedent. The letter itself shows that decedent was divesting himself of all his worldly goods which suggest a testamentary gift. The language pertaining to real estate has the effect of conveyance after death not during his lifetime.

After a study of the writing and of the briefs and cases cited the court is convinced that Thomas Perry died leaving a will; that the letter, as a matter of law, shows testamentary intent with reasonable certainty and, therefore, extrinsic evidence is not necessary nor admissible.

The decree of the register of wills allowing the instrument to be probated as a will is affirmed.

### ORDER

Now, this March 23, 1981, the court finds as a matter of law that the instrument of Thomas Perry, deceased is a will; that the decree of probate of the register of wills is affirmed.

Proceedings to interpret the will to follow.