300

# Heffner Will

*Allen H. Smith,* for Edna Strayer.

*Daniel W. Shoemaker,* for Donna Herman and Allen Herman.

*Nevin Stetler,* for Nolan E. Heffner.

OPINION BY SHADLE, P.J., MAY 15, 1981:

This is an appeal from a decision of the register of wills which (a) revoked letters of administration previously granted on the estate of the decedent, (b) admitted to probate a writing alleged to be the will of the decedent, and (c) granted letters testamentary thereon to Nolan E. Heffner. The issues are as follows:

(1) Whether the writing is testamentary in nature.

(2) Whether the writing was signed by the decedent.

(3) Whether the appellees are barred by laches or estoppel from asserting the validity of the writing as a will of the decedent.

### Findings of Fact

On the basis of the record and the evidence produced at an evidentiary hearing, we find the following facts:

Marie I. Heffner died on October 20, 1968, survived by two sons, Nolan E. Heffner and Delmas M. Heffner, as her only heirs at law. On October 30, 1968, on petition of Nolan E. Heffner alleging that the decedent died thereon intestate, letters of administration were granted to Nolan E. Heffner, Delmas M. Heffner having renounced his right thereto. An inventory was filed indicating that the decedent was possessed

of certain personal property and of real estate located on Main Street in Felton Borough, York County. Inheritance tax was paid and the estate apparently was informally closed late in 1969.

On March 3, 1980, Delmas M. Heffner died leaving a will in which he devised his one-half interest in the Felton Borough real estate in question to Edna Strayer. On May 23, 1980, Nolan E. Heffner filed with the register of wills an undated writing alleged to be the will of Marie I. Heffner. He also filed his own petition praying that the register revoke the letters of administration previously granted to him, and that letters testamentary on the alleged will be granted to him as the surviving executor thereof.

The writing was as follows:

"Delmas & Nolan
 If anything happens me Donna and Allen are to have the house
 Mother"

Following a contested hearing before the register of wills, the register entered a decision revoking the prior letters of administration, admitting the writing to probate as the will of the decedent, and granting letters testamentary thereon to Nolan E. Heffner as the surviving executor thereof. Edna Strayer has appealed to this court from such decision.

Donna Herman was a grandniece of the decedent, and was raised by the decedent from the time she was six weeks old, during which time both of them resided in the real estate in question. Donna was married to Allen on February 10, 1968, after which both of them resided in the premises with the decedent until her death eight months later. Donna and Allen have continued to reside in the premises ever since, paying the taxes, upkeep and expenses thereon. At the time of the death of the decedent Donna was seventeen years old.

Some time after the marriage of Donna and Allen the decedent exhibited to Dorothy Fisher, a friend for sixty years, a writing which the witness did not read, at which time the decedent stated that she was going to make Nolan her executor, and that she wanted Donna and Allen to have her home. About a half dozen times, both before and after Donna's marriage, the decedent stated to her niece, Viola Hare, that she wanted Donna to have her house. In September, 1968, which was ap-

proximately one month before her death, the decedent stated to Kathryn S. Shultz, a long time neighbor, that she wanted Donna and Allen to have her home. Sometime before Donna's marriage, the decedent stated to Donald E. Atkins and Naomi Atkins, long time neighbors, that she wanted Donna to have the house, and the decedent sold to them a small portion of a lot adjoining the house, but declined to sell them more land because Donna might want it in connection with the house.

The day after the decedent died, her relatives, including Donna, Allen, Nolan and Delmas, met at the home of the decedent and removed the contents of the pocketbook of the decedent. Included among the contents was the writing in question, which all parties examined. Donna Herman, Allen Herman, Nolan E. Heffner, Dorothy Fisher, Viola Hare and Kathryn S. Shultz all agreed that the writing was in the handwriting of the decedent.

### Discussion

Preliminarily, we address the contention of Nolan that the appellant, Edna Strayer, as the beneficiary under the will of Delmas, is barred by the lapse of time from pursuing the instant appeal by Section 908(a) of the PEF Code. That section provides:

> "Any party in interest who is aggrieved by a decree of the register . . . may appeal therefrom to the court within one year of the decree . . ."

The writing was delivered by Nolan E. Heffner to the attorney who represented him in settling the estate of the decedent. The attorney apparently retained the writing until the present proceedings were initiated. Periodically after the death of the decedent Donna and Allen inquired of Nolan and Delmas as to what was to be done about the real estate, to which the latter always replied that the attorney for the estate was "taking care" of the matter. At the hearing Nolan explained the delay by stating his belief that nothing could be done about the real estate until Donna became twenty-one years old, at which time he anticipated that he and Delmas and their wives would "sign off" the real estate, but that nothing to that end was ever done because of certain disagreements between Nolan and Delmas. When Delmas died and devised a

one-half interest in the real estate to Edna Strayer, this prompted Donna and Allen to initiate the present proceedings. There is no explanation of why Nolan, rather than they, filed the alleged will and petitioned for revocation of the prior letters and the grant of new letters, nor of why Nolan, who did take such action, now takes a position as appellee in opposition to the validity of the alleged will.

Nolan appears to argue that the instant appeal is from the October 30, 1968 action of the register in granting the original letters of administration, which appeal has been filed more than twelve years thereafter. This contention obviously is erroneous. The instant appeal is not from the 1968 decision but from the August 29, 1980 decision of the register admitting the disputed writing to probate, and at the same time revoking the prior letters and granting new letters. The fact that the 1980 decision reversed the 1968 decision of the register does not render the present appeal one from the 1968 decision. The instant appeal clearly is timely under Section 908.

Also preliminarily, Nolan contends that there is not sufficient evidence that the document in fact was written by the decedent. The evidence was precisely to the contrary. As we have noted, six witnesses, one of whom was Nolan himself, and three of whom were totally disinterested, testified that the handwriting was that of the decedent. Nolan now argues that there was no proof that such witnesses had sufficient knowledge of the decedent's handwriting to so testify. However, the witnesses did testify that they knew and had seen her handwriting over the long period of time they had known her. In any event, all of such testimony was admitted without objection by Nolan or anyone else. We have no hesitation in concluding that the document in fact was written by the decedent.

The next issue is whether the writing is testamentary in nature. As above quoted, the document states that "if anything happens me Donna and Allen are to have the house." This is precisely the type of language which has been held to be testamentary. In *Kling Will*, 7 FIDUC. REP. 44, a writing stating: "Joseph Kling, Jr. If anything happens to me take over it is yours my wife Helen Ruth gets nothing Your Father Pop," was held to be testamentary in character despite the fact

that it was an informal paper in the nature of a note addressed to the son of the decedent, because it demonstrated a testamentary intent to make a posthumous gift.

In *Kimmel's Est.*, 278 Pa. 435, an informal writing in the form of a letter to children, stating that "If enny thing happens" certain assets "goes to" named persons, was held to be testamentary in nature. The court there stated:

> "While the informal character of a paper is an element in determining whether or not it was intended to be testamentary (citation omitted) this becomes a matter of no moment when it appears thereby that the decedent's purpose was to make a posthumous gift.***
>
> It is equally clear that where, as here, the words 'if enny thing happens' condition the gift, they strongly support the idea of a testamentary intent; indeed, they exactly state what is expressed in or must be implied from every will." .

A writing need not assume any particular form or be couched in language technically appropriate to its testamentary character to take effect as a will, and if it is a legal declaration of the intention of the decedent which he wills to be performed after his death, it must be given effect as a will: *Estate of Sedmak*, 467 Pa. 379; *Estate of Logan*, 489 Pa. 29.

We are satisfied that the writing in question was intended by the decedent to be testamentary in nature, and that it qualifies as such.

The next issue is whether the document was signed by the decedent as required to make it effective as a will. As noted, the signature simply is "Mother." Such a signature in this precise form was held to be sufficient in *Wilson Est.*, 22 FIDUC. REP. 126. In like manner, the signature "Father" was held effective in *Kimmel's Estate*, supra. Finally, a document signed "Pop" was held to be properly signed because the testator intended this word to be his signature: *Kling Will*, 7 FIDUC. REP. 44.

In the instant case, since, as we have found, the document was written by the decedent and was addressed to her two sons, we are satisfied that the signature "Mother" was intended by the decedent to be her signature, and is legally effective as such.

The final issue, and the one most strenuously pressed, is whether Donna and Allen are barred by the doctrines of laches

or estoppel from now asserting the validity of the writing as the will of the decedent. The appellant, Edna Strayer, as the beneficiary under the will of Delmas, and, strangely enough, Nolan himself, point to the facts that twelve years have elapsed since the death of the decedent, and the intervening recent death of Delmas makes him unavailable to testify on the subject of delay in asserting the will.

We do not consider the intervening death of Delmas to be of crucial importance. It is undisputed as to when and how the will was found, that Nolan assumed possession of it and delivered it into the custody of his attorney where it remained until the present proceedings. Delmas renounced his right to act as administrator, and Nolan alone functioned in that capacity. Both Donna and Allen testified that they inquired of both Nolan and Delmas on numerous occasions as to what was being done about the will and the real estate, and that both brothers replied that the attorney for the estate was "taking care of" the matter. Nolan agreed that Donna and Allen have continued to occupy the premises and to pay the taxes, upkeep and expenses thereon since the death of the decedent. Nolan explained the delay by his belief that nothing could be done about the real estate until Donna became twenty-one years old, at which time he and Delmas anticipated that they and their wives would "sign off" the real estate, apparently to Donna and Allen.

It was the death of Delmas in 1980, and his apparent devise of his interest in the real estate to Edna Strayer which finally promoted the present proceedings. It was abundantly apparent at the hearing that Donna and Allen are unsophisticated and unfamiliar with the law. In light of this, and the facts that they continued without objection to occupy and maintain the house, and that in response to their repeated inquiries both brothers responded that the matter was being "taken care of," it is not surprising that they did not become alarmed until Delmas died and purported to devise an interest in the premises to a third person. In the meantime, it was not Donna and Allen, but Nolan, apparently with the concurrence of Delmas, who allowed the will to remain in the file of an attorney over the intervening twelve years.

Under these circumstances, Donna and Allen cannot be charged with knowingly sleeping on their rights by not obtaining possession of and probating the will. Neither can it be said that either Nolan or Delmas suffered any prejudice by the delay, since only Donna and Allen paid the maintenance expenses in the meantime. We do not attribute any bad faith or dishonesty to Nolan as a result of the lapse of time. However, the conclusion is inescapable that such lapse of time and the effect thereof must be charged to him rather than to Donna and Allen. As a result, the latter are not barred by laches or estoppel.

### Conclusions of Law

(1) The writing in question is testamentary in nature.

(2) Such writing was signed by the decedent.

(3) Donna Herman and Allen Herman are not barred by laches or estoppel from asserting the validity of such writing as the will of the decedent.

(4) The decision of the register of wills admitting such will to probate must be affirmed.