Hengen's Estate.

Argued January 15, 1940. Before Schaffer, C. J., Maxey, Drew, Linn, Stern, Barnes and Patterson, JJ.

*S. Thomas Bulfamonte,* for appellant.

*Wallace M. Keely,* for appellee.

Opinion by Mr. Justice Patterson, March 25, 1940:

Appellant complains of the dismissal of an appeal from the probate of a certain undated writing as a codicil to the will of Mary L. Hengen who died on January 24, 1938.

By her formal will, dated July 20, 1935, after providing for the payment of debts and funeral expenses, decedent bequeathed certain household goods and furnishings to her daughter Mary, called Mamie, with whom she had made her home from May or June of 1935 until her death and whom she named executrix. She directed that the residue of her estate, including any and all real estate which she might own at the time of her death, be sold and provided that $1,000 of the proceeds should go to Mary and the balance in equal shares to Mary and her two brothers, Charles J. Hengen, appellant, and Walter S. Hengen.

With this instrument was probated, as a codicil thereto, a paper containing the words "I want Mamie to have my House 544 George St. M. L. Henge." This paper was found in a drawer, together with the decedent's will and

her other important papers, pinned to the active page of a savings account book evidencing one of the principal assets of her estate. It was in the decedent's handwriting and was signed by her, but was not dated. The property described was the only real estate owned by decedent at her death.

The sole grounds urged in the court below against the probate of the writing in question and therefore the only grounds to be considered here were that it is not an instrument testamentary in character and that it was not actually proven to have been executed subsequent to the formal will.

A writing need not assume any particular form or be couched in language technically appropriate to its testamentary character to take effect as a will or codicil. If the instrument is in writing and signed by the decedent at the end thereof and is an otherwise legal declaration of his intention which he wills to be performed after his death, it must be given effect as a will or codicil, as the case may be: see *Zell's Estate,* 329 Pa. 312, and cases there collected, at 314.

Appellant argues that the words "I want Mamie to have my House," without the addition of the words "after my death" or words of similar import, disclose merely an intention to make a gift within the lifetime of the testatrix. A similar contention was unsuccessfully made in *Tozer v. Jackson,* 164 Pa. 373, where the informal writing offered for probate read "High James Rogers do give to John Jackson, Sr., my property known as Pen argyl Hotel and the land adjoining in Pen argyl in Northampton County P. A. James Rogers." This Court held that since undoubtedly the language was intended to have the effect of conveying the real estate described and since it could not possibly have that effect except as a testamentary instrument, after the death of the donor, the paper was prima facie testamentary in character; further that the circumstances that the deceased, instead of destroying the paper as he would have

done if he did not intend it to be operative, preserved it and placed it in a conspicuous position where it would certainly be discovered, entirely excluded any inference other than that the instruemnt was intended as a testamentary disposition.

Here, as in the Tozer Case, the paper could accomplish its intended purpose of conveying the real estate only as a testamentary disposition, and here, as there, the paper was in the possession of the decedent to the moment of death and was placed by her where it would certainly be discovered after death.

Particularly pertinent is the case of *Cock v. Cooke*, L. Rep. 1 Prob. and Div. 241, approved and relied upon by this Court in the Tozer Case. There the following writing was held to be testamentary: "I wish my Sister, Louisa Cook of 104 York Road Lambeth to have my Schering (Charing) Cross bank book for her own use. Sarah Jenkins". Mr. Justice GREEN quoted with approval from the language of the Court as follows: "The expression, 'I wish my sister to have', etc. appears to me to imply, 'I wish her to have after my death', because when she wrote those words she was dangerously ill and did not expect to live, and if she had merely wished to make her sister a present she would not have taken the trouble to write anything at all, but would simply have handed the bank book over to her." In the present case, testimony elicited by the appellant on cross-examination shows that testatrix, although keen and alert of mind until shortly before her death, was "quite ill" in body for at least a year and a half prior thereto and was "gradually getting weaker."

Under all the circumstances the words "I want Mamie to have my House" necessarily must be taken to refer to a time in the future, to wit, after the death of the testatrix, and therefore the court below rightly held the instrument to be testamentary in character.

For the contention that the writing was not entitled to probate as a codicil because it is undated and there

was no proof that it was in fact executed subsequent to the will, appellant relies upon *Jacoby's Estate*, 190 Pa. 382, wherein it was said, at 396, that an adequate testamentary paper having a specific date "is incapable of destruction by any other testamentary writing unless the latter was executed at a subsequent date," that "it is not enough that such might have been the case, it must actually have been the case," and that "it will not do to show a state of facts from which it may be inferred that the execution was subsequent."

Inasmuch as the Court in the Jacoby Case had already concluded that the writing there in question was not testamentary in character, the language quoted was unnecessary to that decision. Furthermore, it was specifically pointed out, at page 396, that in that case all the probabilities were that the writing was signed long before the execution of the formal will.

Even had the language of the Court in the Jacoby Case been necessary to that decision, it would have to be regarded as overruled by the decision in *Glass' Estate*, 331 Pa. 561. In that case this Court held an envelope found in testatrix's safe deposit box, containing securities and on which appeared the words "Property of Charles C. Gearhart . . . to my executor – – Please deliver enclosed to Mr. Gearhart . . . Held for safe keeping" and the signature of the decedent, to be a valid codicil to decedent's formal will, although the paper was not dated and there was no actual proof that it was executed subsequent to the date of the will, but merely proof of facts from which subsequent execution could be inferred. The Court said, at page 564, as a necessary part of the case, that it could be legitimately inferred from the facts established by the testimony "that the writing in question was regarded by the decedent as a 'live' document, subsequent to the date of her will, . . . and that if it was a testamentary paper, it was not revoked by her will's revoking clause which

expressly referred to 'all other wills by me at any time heretofore made' ".

The evidence establishes that on January 1, 1937, almost a year and a half after the date of the will, when the last interest entry was made in testatrix's pass book, the writing was not pinned therein, and further that in examining all of his mother's papers except the pass book in April or May of 1937, appellant did not find the paper in question among her effects. From this evidence and the circumstances under which the writing was discovered after the death of testatrix, which circumstances show beyond question that she regarded the writing as a "live" document up to the time of her death, the court below was justified in finding that the paper was executed subsequent to July 20, 1935, the date of the formal will.

It follows that the writing in question was properly admitted to probate as a codicil to the will of Mary L. Hengen, and the decree of the court below is therefore affirmed. Costs to be paid by appellant.