## Updegrove Estate

*John H. Longaker* and *Thomas R. Butler*, for proponents.

*C. Edmund Wells*, for caveators.

TAXIS, P. J., November 19, 1957.—Mary S. Updegrove died on February 12, 1955, survived by four children, James, Ellwood, Maude Neiman and Cecelia H. Rhoads, and two grandchildren, David and Evelyn Updegrove, children of a deceased son, Levi. Her estate is composed of approximately $36,000 in real estate and $1,500 in personalty.

On February 14, 1955, a caveat was filed by all the heirs except James. In March 1955, however, the two grandchildren withdrew as caveators and became proponents. The formal caveat filed subsequently alleged as grounds for contest: (1) Lack of testamentary capacity; (2) undue influence; and (3) invalid execution by mark.

On April 13, 1955, James Updegrove offered two instruments for probate: A writing, subsequently labeled for identification will no. 1, erroneously dated November 7, 1941, and a codicil thereto dated September 12, 1946. Both instruments were executed by mark. Another instrument, labeled for identification will no. 2, also dated November 7, 1941, was introduced into evidence but never offered for probate. No views are now expressed concerning the validity of will no. 2; it is not before us for decision.

At the outset, a word must be said concerning the two dates, on will no. 1 and will no. 2, being the same. Oral testimony of Mary Mason and Thomas Butler, clearly establishes that will no. 2 was in fact executed on November 7, 1941, whereas, in point of fact, will no. 1 was actually executed on July 13, 1942. An erroneous date may be corrected by oral testimony:

Hengen's Estate, 337 Pa. 547. Cf. Fiduciary Review, August 1953. The explanation for this rather odd situation is that Mary Mason, the typist, used will no. 2 as a form in typing will no. 1, and instead of changing the date to the actual date, erroneously copied the November 7, 1941, date into will no. 1.

The situation therefore is to be considered as if will no. 1 was dated July 13, 1942, and the codicil thereto as applying and referring in fact to will no. 1.

Will no. 1 offered for probate gave Levi a life estate in a farm at Frick's Lock, Chester County, and provided: "At the death of my said son, Levi H. Updegrove, I give the said farm in fee simple to his children:—David V. Updegrove and Evelyn Maude Updegrove in equal shares." James H. Updegrove was specifically devised 160 North Evans Street, Pottstown, together with the contents of the house. Item 5 of the will provides: "I give to my five children, namely, Levi H. Updegrove, Cecelia Rhoads, James Updegrove, and Ellwood H. Updegrove, and Maude Neiman, each the sum of five hundred dollars ($500) clear of inheritance tax which is to be paid by my estate." The residue was given to James Updegrove who was also nominated as executor. The estate, however, will probably be consumed by the legacies and specific devises, leaving nothing for distribution under the residuary clause.

In light of their importance the testimonium and attestation clauses of will no. 1 and the codicil are here recited in full:

*Will No. 1*

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 7th day of November, A.D. 1941.

Her

Mary S.  X  Updegrove (Seal)

Mark

SIGNED, SEALED, PUBLISHED, :
and DECLARED by the above :
named Mary S. Updegrove, :
as and for her last will :
and testament, in the presence :
of us, who, at her request :
and in the presence of each :
other, have hereunto subscribed :
our names as witnesses thereto. :
      Mary Mason :
      A. L. Halteman" :

*Codicil*

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 12th day of September, A.D. 1946.

              Her
Mary S.   X   Updegrove (Seal)
              Mark

SIGNED, SEALED, PUBLISHED, :
and DECLARED by the above :
named Mary S. Updegrove, as :
and for a Codicil to her last :
will and testament, in the :
presence of us, who, at her :
request, and in her presence, :
and in the presence of each :
other, have hereunto subscribed :
our names as witnesses thereto. :
      Mary Mason :
      Thomas R. Butler" :

On August 22, 1955, letters of administration pendente lite were granted to The Security Trust Company of Pottstown. On December 30, 1955, subsequent to the last hearing before the register but prior to the first hearing in this court, James Updegrove was adjudged an incompetent and a guardian appointed to represent his interests.

The register held three extensive hearings on the caveat, on May 31, 1955, June 23, 1955, and October 26, 1955. After those hearings the register on April 20, 1956, certified the record to this court upon a finding that a difficult and disputable question had arisen.

Hearings were held by the orphans' court on September 16, 1956, October 8, 1956, and March 14, 1957. Subsequently, after testimony, the matter was extensively argued and full and excellent briefs submitted.

At the first hearing in this court it was stipulated that the testimony taken before the register was to be submitted to this court for its consideration with the right of all parties to submit additional testimony. All parties availed themselves of this right and substantial additional testimony and exhibits were introduced into evidence.

Inasmuch as lack of testamentary capacity and undue influence as grounds for contest have not been sustained by the contestants or even urged by them, those two grounds are herewith dismissed.

Section 2(2) of the Wills Act of April 24, 1947, P. L. 89, provides:

"Signature by Mark. If the testator is unable to sign his name for any reason, a will to which he makes his mark and to which his name is subscribed in his presence before or after he makes his mark, shall be as valid as though he had signed his name thereto: Provided, He makes his mark in the presence of two witnesses who sign their names to the will in his presence."

Section 4 of the Wills Act of April 24, 1947, P. L. 89, provides:

". . . No will shall be valid unless proved by the oaths or affirmations of two competent witnesses."

Section 302(2) of the Register of Wills Act of June 28, 1951, P. L. 638, provides as follows:

". . . In the case of a will signed by mark . . . the proof must be by subscribing witnesses, except to the extent that the register is satisfied that such proof cannot be adduced by the exercise of reasonable diligence. In that event other proof of the execution of the will, including proof of the subscribers' signatures, may be accepted, and proof of the signature of a witness who has subscribed to an attestation clause shall be prima facie proof that the facts recited in the attestation clause are true."

See also the comments of the Commissioners of the Joint State Government Commission to section 302 of the Register of Wills Act.

I conclude that will no. 1, standing alone, is invalid for failure to comply with the strict requirements of execution by mark. The reason is that signature to this writing cannot be proved by the oaths or affirmations of two witnesses as required by section 4 of the Wills Act.

Other than the two suscribing witnesses, who are Mary Mason and A. L. Halteman, only two other persons were present in the scrivener's law office at the time of execution of will no. 1, i.e., Miss Isabel Darlington, the scrivener, who died in 1950, and James Updegrove, the son and residuary legatee, who was adjudged an incompetent on December 30, 1955. Although James Updegrove did testify at the June 23, 1955, hearing before the register, which date was approximately six months before he was adjudged incompetent, a reading of his testimony discloses such a hopeless mass of almost jibberish responses that we could not with any confidence make any findings based on his testimony. The only two witnesses, therefore, who could prove this will are the subscribing witnesses, Mary Mason and A. L. Halteman. A. L. Halteman, however, died on December 31, 1943. Proof of Mr. Halteman's signature was submitted, but that is not

enough. Proof, by others, of the signature of a subscribing witness who is dead, is prima facie proof of a proper execution of the will by mark if the attestation clause recites a full and complete compliance with the requirements of section 2(2) of the Wills Act of 1947. Since the attestation clause in the present will no. 1 is hopelessly defective and insufficient in this regard, it is impossible therefore to prove this instrument as a will by two competent witnesses in compliance with section 4 of the Wills Act of 1947.

Examination of the attestation clause to will no. 1 indicates that it is the usual form employed by those who sign by actual signature, not by mark. This attestation clause is hopelessly defective therefore in that: (1) There is no reference to testatrix's inability to sign her name; (2) to the fact that she made her mark in the presence of the subscribing witnesses; and (3) that her name was subcribed to the will in her presence.

Had the attestation clause been carefully drawn to encompass the statutory requirements, then prima facie, the deficiency might be rectified by operation of section 302(2) of the Register of Wills Act, and would place upon contestants the burden of dispelling the prima facie effect of the facts recited in the attestation clause. But because of this defect, it is obvious that the will cannot be proved by two witnesses as required. Having failed to comply with sections 2(2) and 4 of the Wills Act of 1947, the writing is invalid as a will. See Bregy, Wills Act, p. 2307.

Was will no. 1 republished by the codicil executed by mark on September 12, 1946? A properly executed codicil cures any defects in the execution of the will: Hickman's Estate, 308 Pa. 230. Republication by codicil executed by mark must be accompanied with the same exactness as is required to attend the execution of the will originally: Holmes' Estate, 240 Pa. 537.

I conclude that the codicil was not executed by mark in compliance with the statutory requirements and is therefore invalid. Republication of will no. 1 was therefore not accomplished and will no. 1 is invalid for failure to prove execution by mark by two competent witnesses as already demonstrated.

A reference to the testimony will demonstrate, beyond peradventure, that the evidence of the two subscribing witnesses, Mary Mason and Thomas S. Butler, is so hopelessly deficient that no other conclusion is possible.

Signature may not be by mark if decedent is able to sign her name, but the determination of her ability to sign is largely for her: Rosato's Estate, 322 Pa. 229. Cf. Kline's Estate, 322 Pa. 374. Although it is true that the decision as to inability to write her name may be a matter of choice with decedent, nevertheless the existence of the condition considered by decedent to create her inability and the fact of such exercise of such decision by decedent and the actual determination or explanation of decedent of her reason for not signing must be proved by the clear, positive, convincing and unshaken independent testimony of two witnesses. In this record there are two places where such testimony might be found, if at all: (1) Oral testimony of witnesses; and (2) the attestation clause to the extent that its recitals supply any deficiency in the oral testimony of the subscribing witnesses. Cf. section 302(2) of the Register of Wills Act of 1951.

The testimony of Mary Mason clearly establishes that decedent was healthy, alert and in possession of all her faculties both mental and physical, so that no reason appears in her testimony why decedent could not have signed the will in her own handwriting. Although decedent was a poor penman, she nevertheless could write her name, had frequently signed checks and had previously signed her name to a will which

was admitted into evidence. As to decedent's ability to see, Miss Mason, on several occasions in her testimony, indicated that decedent at that time had no difficulty whatever with her eyesight and that she could see. I conclude from a careful and thorough consideration of the testimony of Miss Mason that it is inadequate and that the codicil cannot be proved by the oath or affirmation of two witnesses as required by section 4 of the Wills Act of 1947. Moreover, there is no testimony in this case that this codicil was prepared or executed under any extremity, emergency or demanding pressures of any kind. Decedent could see, she could write, she was in sound, robust health, possessed a firm hand and was not suffering from any disability, handicap or mental or physical limitation which made it necessary to sign by mark.

The witness, Thomas R. Butler, Esq., testified as to the events occurring at the time the codicil was executed by mark. His testimony is likewise deficient on the question of the inability of decedent to sign her name. Although he indicated that her eyesight appeared to be impaired, his testimony leaves much to be desired in order to show any inability on the part of decedent. I conclude, therefore, that Mr. Butler's testimony concerning the inability of decedent to sign her name is similarly deficient for the same reasons given concerning the testimony of Mary Mason.

Much testimony was submitted by handwriting experts on both sides designed to establish that these X marks are a forgery. There is a clear conflict in the testimony between contestant's handwriting expert and proponent's handwriting expert. Both subscribing witnesses are firm in their testimony that decedent made these two marks. As there is unimpeached, credible evidence of two subscribing witnesses to the execution of the X mark, the opinion testimony of a handwriting expert standing alone is insufficient to overcome such

positive, factual evidence. Cf. Peterman Will, 367 Pa. 302. I deem it unnecessary to extend this opinion by a discussion of the testimony of these two handwriting experts in light of this rule.

And now, November 19, 1957, the caveat is sustained. Probate is herewith refused the two instruments offered for probate.