## Snyder Estate

*Wayne Theophilus,* for accountant.

*Joseph S. Marshall* and *William A. Seifert, Jr.,* for Boys Club of Pittsburgh, alleged legatee.

*Alexander J. Barron,* for Mattie Rutledge, alleged legatee.

McKENNA, J., February 16, 1972.—The issues before us relate to the validity of several alleged codicils to decedent's last will and testament. There are also certain procedural questions, which we will discuss prior to considering the merits of the case.

Mary K. Snyder died testate on February 20, 1970, at the age of 73. She was a widow at the time of her death, her husband having predeceased her by several years. Apparently, she left no children. Her last will and testament is dated November 30, 1949. The beneficiaries named therein are a nephew, William Gee Lockett, a niece, Sally Early Benton, a grandnephew, John West Benton, Jr., and a grandniece, Katherine Benton. They receive specific bequests and devises and shares in the residuary estate. This will was drawn by an attorney, typed and formally witnessed.

On May 18, 1967, decedent executed a paper alleged to be a codicil to her will, and on January 20, 1968, she signed two other documents. These are all holographic. Copies are as follows:

"Mary K. Snyder

The Park Mansions

Pittsburgh, Pa.                                         May 18, 1967

"First,

"$25,000 to be given to The Boys Club of Pittsburgh, in memory of S. Sheldon Snyder.

"William Gee Lockett, my only nephew, is to have complete charge of what is left in my estate.

"I have been such a shut in for a year and a half, but hope to consult Mr. Roth, my trustee at Mellon Bank and get this paper in Safety Box downtown Mellon Square (Key No. 2870-F)

Mary K. Snyder"

| | | |
|---|---|---|
| "Martha Bracey | 1000 | |
| Sarah Early Benton | 1000 | |
| Katherine Benton | 1000 | |
| John West Benton | 2000 | |
| Charles D. Gee | 1000 | |
| Ida | 1000 | |
| Miles | 1000 | |
| Kenneth Ronnie | 1000 | |
| Lydia Ann | 2000 | |
| Sheldon's grandniece and his favorite relative (See his will) | | |
| Miss Rutledge | 4000 | |
| M. E. | | 200000 |
| Camden Church | 6000 | |
| (My parents memory) | | |

Mary K. Snyder
Jan. 20, 1968"

"Bill Lockett — Everything that is left. This amount shall have to be figured out. He has been the shining light in my life — since I lost my beloved Sheldon. I hope he shall have at least 30,000 to 35,000 or more if luck holds. He is the pride of the family. I worship him.

"These are my assets

| | | |
|---|---|---|
| Blaw Knox Stock | 756 today selling 51 Fri. 68 | |
| Wellington Fund Shares | | |
| War Bonds | $7,350 | |
| Park Mansions Apt. | | ? |
| Diamond Ring | $14,500 | |

See John M. Roberts Appraisal
Furniture      ?
Silver      ?
Misc. Pearls (Bought in Orient 1959)
Fine Old Glass — China
Certificate Mellon Bank (Some $15,000?
  (Cash Mellon Bank $10,000.00)
Savings — Dollar
  Savings $10,000.00

              Mary K. Snyder
              Jan. 20, 1968"

"P.S.   I wanted one other bequest made in memory of Sheldon if there should be enough for this?? $2,500.00 to E. Liberty Y.M.C.A. He was partial to that branch Y.M.C.A. and at one time was (I believe) on the board out there."

The two latter documents, dated January 20, 1968, are written on opposite sides of the same sheet. It cannot be determined from an inspection of the papers which was written first.

There are additional phrases on this sheet, but they have not been stated herein for this reason: The executor believes that said statements may be libelous. He has asked that the originals be impounded and the register has complied with this request.

Mellon National Bank and Trust Company was named as executor in the will. On March 11, 1970, letters of administration c.t.a. were granted to the bank. Letters of administration instead of letters testamentary were issued, as it was believed by the parties in interest that testatrix, by the writing of May 18, 1967, may have appointed William Gee Lockett as her executor. He has renounced his right to serve as such, and Mellon is acting as the fiduciary.

A petition for distribution has been presented to

this court. This lists, as the parties in interest, all those named in the will and in the other documents. In paragraph 20 of the petition, it is stated that "other matters requiring adjudication are as listed in Exhibit 'L.' " The exhibit reads as follows:

"MARY K. SNYDER—

"Issues presented by handwritten instruments:

"*Instrument dated May 18, 1967.*

"1. Whether the writings on the inside cover of the tablet is testamentary and therefore the instrument should be treated as a codicil to the Will dated November 30, 1949?

"2. If the writing is testamentary, does the decedent's signature along the lower left side of the inside cover constitute a signature 'at the end thereof' as required by Section 2 of the Wills Act of 1949?

"3. Whether the language '. . . William Gee Lockett, my only nephew, is to have complete charge of what is left in my estate . . .' constitutes a bequest of the residuary estate to Mr. Lockett or whether it means that Mr. Lockett was to act as Executor of the estate? (NOTE—William G. Lockett signed a renunciation to act as executor because there was a possibility that the above clause could be construed to mean that he was to serve as the executor.)

"*Instrument dated January 20, 1968.*

"1. Whether the writing on each side of the paper is testamentary and therefore the instrument should be treated as a Codicil to Will dated November 30, 1949?

"2. Whether the writing of names of individuals with numbers beside the names creates cash bequests to the named individuals?

"3. Assuming that the answer to #2 is yes, should the bequest to John West Benton be $2,000.00 or

$1,000.00, as it appears that either the number 2 has been superimposed over the 1 or vice versa?

"4. Assuming that the answer to #2 is yes, does the placing of lines through the names of Charles D. Gee, Ida and Kenneth result in a revocation of the bequests?

"5. Assuming that the answers to #2 and #4 are yes, is Ronald Reichert (referred to in the instrument as Ronnie), entitled to receive the $1,000.00 which was bequeathed to Kenneth Snyder (referred to in the instrument as Kenneth)?

"6. Whether language providing that Bill Lockett (same person as William G. Lockett in May 18, 1967 instrument) is to receive 'everything that is left' creates a bequest of the residuary estate to Mr. Lockett?

"7. Whether the P.S. written vertically on the back side of the instrument providing that the decedent wanted 'one other bequest made in memory of Sheldon' in the amount of $2,500.00 to Y M C A of East Liberty constitutes an effective bequest?

"8. Assuming that the answer to #6 is yes, and that the instrument dated May 18, 1967, is a valid testamentary writing, does the bequest of 'everything that is left' to Bill Lockett revoke by implication the cash bequest of $25,000.00 to the Boys Club of Pittsburgh, or does the language contained in #7 that the decedent wanted to make 'one other bequest in memory of her husband, Sheldon' and the fact that the only other bequest in memory of her husband was the bequest to the Boys Club indicate that the decedent had no intention of revoking the bequest to the Boys Club?

"9. Assuming that the instrument dated May 18, 1967 is not a valid testamentary writing and that the instrument dated January 20, 1968 is, does the statement in the later instrument that the decedent wanted to 'make one other bequest in memory of her husband, Sheldon,' and the fact that the only other reference to

a bequest in memory of her husband was the gift of $25,000 to the Boys Club of Pittsburgh in the instrument dated May 18, 1967, incorporate by reference the gift to the Boys Club?"

The court set the case for hearing on December 7, 1971, and it was heard on that date. The appearances for parties in interest were very limited. Wayne Theophilus, Esq., appeared for the estate, and Joseph I. Marshall, Esq., represented the Boys Club of Pittsburgh. After the hearing, Alexander J. Barron, Esq., entered his appearance for Mattie Rutledge, who is named as "Miss Rutledge" in one of the papers signed by decedent and dated January 20, 1968. The other parties in interest are willing to let the matters stand on the record as made and to "abide by the decision of the Court."

At the hearing, counsel for the Boys Club called as his witness Attorney William A. Seifert, Jr. The witness was a neighbor of decedent, but did not represent her professionally. Mr. Seifert testified that decedent and her husband had always been interested in the Boys Club of Pittsburgh. Decedent's husband had been on its Board of Directors prior to his death. On Sunday, June 1, 1969, the witness's brother, Edward, was called to St. Francis Hospital by Mrs. Snyder. She was then a patient in that institution. Edward found that Mrs. Snyder had actually wanted to see William, so William visited her on the following day, June 2nd. She was then physically ill, but mentally alert. She told him she wished to make a gift of $25,000 to the Boys Club. As Mr. Seifert was not her attorney, he suggested that she contact her counsel later. He visited her again on June 19, 1969. She had recovered from her illness and was cheerful. Again, she expressed her intent to give $25,000 to the Boys Club.

Mattie Rutledge also appeared at the hearing. She

was not then represented by counsel. She said that she was a "fast friend" of decedent in her lifetime. Decedent had told her about her affection for the Boys Club, and that she, Mattie, was in the will. Decedent told the witness she had planned to make a new will, but had not got around to it.

Counsel for the estate reported that he had offered all the documents above described to the register, so that they could be brought before the court and construed.

The executor has stated a number of questions for our determination as listed above. These concern, first, the validity of the three documents under consideration; and secondly, the construction of them, if it is held that they or any of them do qualify as testamentary writings. Since we have determined that the three alleged codicils may not be probated, we need not discuss at length other questions raised.

## DISCUSSION

### I. *Procedure*

The case comes before us in an unusual manner. There has been no appeal from the register's act of receiving papers herein discussed, nor has there been a certification of records to this court. These procedures are available to parties in interest and to the register, respectively, under the Register of Wills Act of June 28, 1951, P. L. 638, secs. 207 and 208, 20 PS §1840.207-208. The sections read as follows:

"Certification of records to court

"Whenever a caveat shall be filed or a dispute shall arise before the register concerning the probate of a will, the grant of letters or the performance of any other function by the register, he may certify, or the court upon petition of any party in interest may direct the register at any stage of the proceedings to certify,

the entire record to the court, which shall proceed to a determination of the issue in dispute. No letters of administration pendente lite shall be granted by the register after proceedings have been removed to the court except by leave of court." June 28, 1951, P. L. 638, art. II, sec. 207.

"Appeals

"(a) When Allowed. Any party in interest who is aggrieved by a decree of the register, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom to the court within two years of the decree: Provided, That the executor designated in an instrument shall not by virtue of such designation be deemed a party in interest who may appeal from a decree refusing probate of it. The court, upon petition of a party in interest, may limit the time for appeal to six months.": Sec. 208.

In the petition for distribution, the questions, as listed above, are stated, and apparently all parties agree that they are before us. Accordingly, we will consider and dispose of them. In any event, it is clear that a writing which does not meet the requirements of the Wills Act is not a will and cannot be made so by the register. A situation similar to that existing in the case at bar was ruled on by the Supreme Court in Monske Will, 402 Pa. 610 (1961). An alleged will was received by the register. No appeal from the probate was taken. At the audit of the account of the administrator, c.t.a., a petition for distribution was presented, asking the court to construe the writing. The auditing judge held that the document was not testamentary in character and directed that the estate be distributed in accordance with the intestate laws. The Supreme Court affirmed. Our course of action in the case at bar is consonant with that decision.

Counsel for Mrs. Rutledge argues that the probate

of the three papers under consideration is conclusive as to all property devised or bequeathed by it, unless an appeal is taken from the probate. He cited Hickman's Estate, 308 Pa. 230 (1932), in support of his position, as well as a list of cases from 20 PS §1840.208. The principle is not applicable here. The question before us is whether or not there are a will and codicils thereto, and obviously the register cannot create testamentary instruments where none exists. Also, at the time of audit and at the hearing, counsel for the estate indicated that the register admitted all the documents offered merely for the purpose of having the court pass on them. At the audit he stated:

"The questions to be answered have been propounded in the petition."

And at the hearing:

". . . we probated them for whatever they might be worth."

Accordingly, we have considered the documents and the evidence in the case to determine if any of the writings are codicils.

II. *As to the testamentary of the writings.*

There is no question as to the formal document signed by testatrix on November 30, 1949. It complies in all respects with the Wills Act of April 24, 1947, P. L. 89, sec. 2, 20 PS §180.2. There are, however, serious questions concerning the other documents. The principles by which we must be guided are well settled by numerous appellate court cases. The statutory provisions are brief. The Wills Act of April 24, 1947, P. L. 89, sec. 2, 20 PS §180.2, provides that:

"Every will, except nuncupative wills but including wills of mariners and persons in the Armed Forces of the United States, shall be in writing and shall be

signed by the testator at the end thereof, subject to the following rules and exceptions: . . ."

The term "end" means "logical and sequential end," and not the place furthest removed from the beginning: Miller Will, 414 Pa. 385 (1964). There may be an argument that the alleged codicil of May 18, 1967, was not signed at the end. We believe, however, that the signature is valid and appears at the sequential end of the writing. We will not base our decision on this ground.

In Hengen's Estate, 337 Pa. 547 (1940), 12 A.2d 119, it is said:

"A writing need not assume any particular form or be couched in language technically appropriate to its testamentary character to take effect as a will or codicil. If the instrument is in writing and signed by the decedent at the end thereof and is an otherwise legal declaration of his intention which he wills to be performed after his death, it must be given effect as a will or codicil, as the case may be: . . ."

We find in the case at bar, the writings in question do not contain legal declarations of decedent's intentions which she willed to be performed after her death. Therefore, they do not qualify as wills or as codicils.

In McGrory v. Fisher, 260 Pa. 152 (1918), the court denied probate of an alleged will. It said, page 156:

"The writing in question is not testamentary in form, nor can testamentary intent be clearly derived from the instrument itself. It consists of a list of various items of property, some real and some personal, and it refers to certain policies of life insurance. The list was written upon the back of a stray sheet of paper, and near the bottom of the sheet is a column of figures footed up, evidently intended to show the sum total of the value of the listed properties. About half way

down the column of figures, and directly opposite one of the smaller items, the words 'For Ev and Anna' appear, and below them, is the signature, P. Mc-Grory. There is nothing on the paper to indicate whether it was the paper itself, as a memorandum, which was intended 'for Ev and Anna,' or whether the words were intended to apply to the properties as listed. Nor was there anything to show when 'Ev and Anna' were to take whatever was intended for them."

Jacoby's Estate, 190 Pa. 382 (1899), is similar on its facts to the case at bar. Testator executed a formal will and a codicil thereto 10 days later. Both had been prepared by decedent's attorney. These were duly probated. Thereafter, numerous memoranda were found and were offered for probate. The court refused the offer. It relied on Patterson v. English, 71 Pa. 454, and quoted therefrom as follows:

"In the course of the opinion it was said: 'But how does it appear that the incomplete memoranda in this case were intended to operate as a will? There is nothing on the face of the paper or in the words themselves to indicate such intent, nor is there anything from which it can be inferred that any gift was intended, except the words "to be paid," in the first, second, and fourth items. But when were the amounts specified in these items to be paid? In the lifetime of the writer or after his decease? There is nothing in the language to show when they were to be paid. These items may have been intended as instructions for his will, or as memoranda of gifts he intended to make in his lifetime. The mere words, "to be paid" do not amount to a testamentary bequest of the sums mentioned, nor show that they were to be paid after his death.' There is much more to the same effect in the opinion, and it is all quite applicable to the facts of the present case."

Jacoby has been followed consistently insofar as it

states the principles on which we rely. In Hengen's Estate, 337 Pa. 547, 551 (1940), a ruling in the case was questioned. This ruling, however, related to proof of the time of execution of the documents relied on to change or amend decedent's formal will. Jacoby was cited with approval in Glass' Estate, 331 Pa. 561, 565 (1938); Whitaker's Estate, 219 Pa. 646, 648 (1908); and Forquer's Estate, 216 Pa. 331 (1907). In this latter case, the court said, page 339:

"Without doubt, too, the careful preservation of a regularly executed will up to the time of death is of importance in the construction of a subsequent paper of doubtful testamentary import, an instance of which is found in Jacoby's Estate, 190 Pa. 382."

Richards Will, 439 Pa. 5 (1970), stands for the same rule. In this case, an admittedly valid will was admitted to probate. Thereafter, a later writing was offered. This is described in the opinion of Mr. Chief Justice Bell for the court, as follows, page 7:

"This last-mentioned writing consisted of five hand-written pages which (1) merely listed item after item of household furnishings and personal effects, and (2) then concluded with the following language: 'Mr. Roland this is the list you ask for *come as soon as you can I want to make a will.* I want George Tobias to have $15,000.00 for your kindness Mr. Roland you shall have $3,000.00 and the rest of my estate I give to the three sisters Anna Z. Good, Dorothy Zerbe and Helen Zerbe. Maud Richards.' "

The court held that this did not constitute a testamentary document, saying, page 9:

"After a study of the August 3, 1967 writing, and of the appellants' brief and the cases cited therein, we are convinced that Mrs. Richards did not consider or intend that writing to be her will, but intended it to be merely directions to David Roland to prepare a written

instrument which would become her will in the future, if and when she approved and signed it."

When the above principles are applied to the facts in the case at bar, it is evident that the three documents offered as codicils to decedent's last will do not qualify as being testamentary in character.

As to the paper dated May 18, 1967, the words "$25,000.00 to be given to the Boys Club," may be construed in a number of ways. This may have been a reminder decedent wrote to herself or to her attorney. She may have intended to make a bequest or a gift inter vivos in the future. In any event, it is clear that she did not then state that the Boys Club was to receive $25,000 on her death. William G. Lockett renounced his right to serve as executor, so we need not consider if the clause giving him "complete charge of what is left in my estate," did constitute him as the executor. We cannot believe that this phrase contains a bequest to Mr. Lockett. This question is raised by the executor as no. 3 in the list of questions relating to the document under consideration. The words "have charge of " might conceivably be used in appointing an executor, but they are not in any sense dispositive. They imply mere custody.

The words "hope to consult Mr. Roth" indicate that the document constitutes a mere memorandum, and not a codicil. It is argued that the words "hope to get this paper in Safety Deposit Box, downtown" proves that decedent considered the document as a codicil, as she evidently wished to deposit it, and not a document to be drawn later, in her safe deposit box. However, we do not find this to be the case. It is more likely that testatrix intended that a new will or codicil would be prepared, and that it would be placed in the vault. The first paper dated January 20, 1968, as quoted in this opinion, is clearly not a codicil. This

consists of a mere list of names and amounts. There are no dispositive words on the paper. It will not be admitted to probate.

The second paper dated January 20, 1968, also fails to qualify as a testamentary document. Again, there are no dispositive provisions. Even if there were, it is questionable if the words "everything that is left" sufficiently identify any property which could be the subject of a bequest or devise. Of course, such words would constitute a sufficient description of a residuary estate in a single instrument. In the case at bar, however, it cannot be determined what testatrix refers to by these words.

Finally, the postscript does not qualify as a codicil. It reads:

"I wanted one other bequest in memory of Sheldon, if there should be enough for this?? $2,500.00 to E. Liberty Y.M.C.A." . . .

It appears that this memorandum is merely a reminder for testatrix herself, or for her attorney, as to some future disposition of her assets.

Counsel for Mrs. Rutledge argues that there is no evidence as to which side of the paper dated January 20, 1968, was first signed by testatrix. He asserts that in the writing naming "Bill Lockett" there are bequests made and that the other side, listing names and amounts, is a continuation of a list of bequests. We cannot agree, for the reason that we have found no dispositive words in either document.

Our conclusion that the papers offered as codicils may not be admitted to probate is consistent with the testimony. The documents in question are dated May 18, 1967, and January 20, 1968. It is apparent from the testimony, that in June of 1969, Mrs. Snyder was still concerned about a gift to the Boys Club. She evidently

556

believed that she had made no such gift or testamentary provision prior to that time.

For the foregoing reasons, decedent's estate will be distributed in accordance with the provisions of her will dated November 30, 1949.

A decree will be entered in accordance with this opinion.