# In re Estate of Basner

C.P. of Chester County, No. 1512-1049

*Emily M. Nelson*, for appellant.
*William R. Hanger*, for appellee.

TUNNELL, *J.*, Aug. 20, 2014—Ellen Basner has appealed to the Orphans' Court Division from the order of the register of wills which admitted to probate a certain handwritten document purportedly signed by Jeffrey K. Basner. After hearing the matter *de novo* on July 30, 2014, the court, sitting without a jury, has decided to deny the appeal. It makes the following:

## Findings of Fact

1. Jeffrey K. Basner, the decedent, died on June 7, 2012.

2. Decedent married Sally J. Basner on April 23, 2005.

3. Ellen Basner is decedent's mother.

4. The decedent resided at 106 Sunnyside Road, West Grove, Chester County, Pennsylvania for over thirty years until his death.

5. The decedent owned no other properties and was the only named owner listed on the deed to the 106 Sunnyside Road, West Grove residence.

6. The decedent and Sally J. Basner separated on or about August 30, 2011.

7. Until the date of separation, the decedent and Sally J. Basner resided together at the 106 Sunnyside Road, West Grove address.

8. Neither of them initiated any formal legal proceedings for divorce or support against the other.

9. During the period of their separation and until the time of his death, the decedent and Sally J. Basner engaged in regular and sometimes daily contact whether in person or via the telephone.

10. During the period of their separation and until the time of his death, Sally J. Basner assisted the decedent with his shopping.

11. During the period of their separation and until the time of his death, Sally J. Basner periodically assisted decedent with his house cleaning.

12. During the period of their separation and until the time of his death, Sally J. Basner provided decedent with medical insurance coverage.

13. The decedent was survived by his wife, Sally J. Basner, parents Ellen and Donald Basner, and three adult siblings.

14. The decedent left no surviving children.

15. On July 7, 1995 and prior to his marriage to Sally J. Basner, the decedent signed a holographic document which stated:

I LEAVE ALL MY

WORLDLY POSSESSIONS

TO ELLEN BASNER

7/7/95 s/Jeffrey K. Basner

16. Ellen Basner was a witness to the decedent's execution of the July 7, 1995 document.

17. An additional document was located at the decedent's residence after his death; the document was apparently signed by the decedent; it bore no date. It is the subject of this appeal.

18. The document states:

AT THE TIME

OF MY DEATH,

THE HOUSE GOES

TO SALLY MUNRO

s/Jeffrey K. Basner

(hereinafter sometimes referred to as the "questioned document" or the "Munro Codicil")

19. The document did not in any way revoke nor did it even refer to the 1995 document which was written and signed by the decedent.

20. There is no specific address in the Munro Codicil.

21. "Sally Munro" is the maiden name of the decedent's wife, Sally J. Basner, and the name was used occasionally by the decedent during their marriage to reference Sally

J. Basner.

22. The questioned document was written and signed by the decedent around August of 2008, after the decedent and Sally J. Basner consulted with attorney Lauren G. Buchanan regarding the drafting of a new will.

23. A petition for probate and grant of letters was filed by Sally J. Basner on or about June 25, 2012.

## Discussion

The hearing before the Orphans' Court Division is *de novo*. 20 Pa. C.S.A. §776.

As the parties agreed that the 1995 document was indeed a will, the only question raised on appeal was whether the other document was signed before, or after, the 1995 will. If before, then obviously the 1995 document leaving "all my worldly goods" to Ellen Basner would necessarily prevail, and govern distribution. If signed after the 1995 will, was it indeed a codicil?

A codicil is a supplement or an addition to a will. It may explain, modify, add to or subtract from, qualify, alter or revoke provisions in an existing will. J. Brooke Aker (Bisel), Law of Wills in Pennsylvania, §1.12 (2d. Ed.) A codicil does not ordinarily, expressly or by necessary implication, revoke a prior will *in toto*. *Id.* To the contrary, a codicil operates as a republication of the will so as to make the will speak as of the date of the codicil. *Id.*, at Section 1.12D.

A writing need not assume any particular form, or be couched in language technically appropriate to its

testamentary character in order to take effect as a codicil. If the instrument is in writing and signed by the decedent at the end thereof, and is an otherwise legal declaration of his intention which he wills to be performed after his death, it will be given effect as a codicil. *In Re: Hengen's Est.,* 337 Pa. 547, 12 A.2d 119 (1940). The facts in *Hengen* are similar. In addition to a formal will, a paper was probated as a codicil. It contained the words:

"I want Mamie to have my House 544 George Street M.L. Hengen."

This paper was found in a drawer. It was in the decedent's handwriting and signed by her, but was not dated. The property described was the only real estate owned by her at her death. The issue was the absence of words like "after my death" or of similar import. The Supreme Court held that under the circumstances, the words "I want Mamie to have my house" necessarily referred to a time in the future, namely, after the death of the testatrix, and therefore was correctly held by the Orphans' Court Division to be a testamentary instrument. *See also, Kauffman's Est.,* 365 Pa. 555, 76 A.2d 414 (1950).

Although the matter is loaded with credibility questions, once the more tangential issues are weeded out and focusing on the document that is the subject of this hearing, there is little difficulty in resolving this dispute. The "Munro Codicil" is very short. The court analyzes its components as follows: (1) is the signature authentic, (2) did decedent really refer to his wife by her maiden name and, if so, does that mean the document was executed

before their 2005 marriage; (3) what is "the house", and (4) what is the import of "at the time of my death."

The first issues deals with the signature, which was questioned by Ellen Basner. She felt that the little discrepancies she saw indicated a forgery. While she was testifying about the signature, the court was looking at P-1. P-1 is the decedent's passport. It also bears a signature on it. No one questioned whether that signature is other than genuine. That signature manifests what is referred to in graphology as standard deviation, which the other exhibited signatures also display. No signature is identical to the next one signed by any of us. If one writes out 25 checks at a time, one's signatures are going to be different, not by a lot, but inevitably they will differ.

The court has no trouble concluding that the signature is genuine on the Munro Codicil. In fact, the decedent's signature would be very difficult to forge. It is sloppy, but it is sloppy in very unique ways. Anyone trying to trace it, or duplicate it, will not be successful, in the court's estimation.

Other questions about what happened to the "Munro Codicil", where did it go, when did it disappear, why did it disappear and then appear again, remain unanswered. But the document did turn up and was found in an informal place. It is on a similar type of paper and has a look and feel that is similar to the 1995 will. The 1995 will is not questioned by the parties as a testamentary document.

Proceeding to the next issue, the named beneficiary on the "Munro Codicil", there is only one Sally Munro.

There is no doubt who that individual is. Sally was however only in the picture as of 2003. Clearly then, the document is later than 1995. In 1995 and up to 2003 there was no Sally Munro in the decedent's life. Concededly, it could have been signed during the two years or so they cohabitated prior to marriage, but the court finds credible the testimony of Sally Basner that the decedent did call her by her maiden name from time to time after marriage. The court also believes that if Sally Basner had been trying to create this document she would probably have used the name "Sally Basner." Thus, the questioned document is not only post 1995 but post-marriage in 2005 as well. The court finds Sally Basner's testimony credible that she saw the decedent write it and sign it following the meeting with the attorney.

Next, it is clear that the decedent owned the house on Sunnyside for 35 years, more or less, and that is a long time. That was undoubtedly what he was referring to and not some other potential partial ownership or a future interest in something else. This house meant something to the decedent. Although the Munro Codicil talks only about the devise of a "house", such a devise necessarily carries with it the land which it physically covers and the additional amount of land, varying according to the circumstances of the case, in an amount necessary to properly and conveniently enjoy the use of the house as inhabited by the testator during his lifetime. *Greenholt v. Franklin*, 267 Pa. Super. 367, 406 A.2d 1085 (1979).

Finally, the phrase "at the time of my death" clearly is testamentary. There are in fact many decided cases in

the Commonwealth like *Hengen, supra,* where even that phrase does not exist; the house just "goes to" whomever. The "Munro Codicil" cannot reasonably be construed to be a post-nuptial agreement or some other contract. It is testamentary in its expression.

The court pays no attention to the accounting issues; the tenant issues and the loan issues are all tangential and do not really bear at all on the issue that was before the court.

## Conclusions of Law

1. The document referred to as the "Munro Codicil" is a valid testamentary disposition.

2. It was executed by the decedent after the 1995 will and after his 2005 marriage to Sally Munro, now Sally Basner.

3. The document is a codicil entitled to probate.

An appropriate order follows.

## ORDER

And now, this 20th day of August, 2014, after hearing, the court sitting without a jury, denies the appeal of Ellen Basner for the reasons set forth in the decision.