J-A30021-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| IN RE: ESTATE OF BLANCHE BEURY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: PATRICK BEURY, MICHAEL DAVID APPEL AND MICHELLE LEE APPEL | |
| | No. 418 WDA 2018 |

Appeal from the Order, February 26, 2018,
in the Court of Common Pleas of Allegheny County,
Orphans' Court at No(s):  202 of 2016.

BEFORE:   SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY KUNSELMAN, J.:                FILED MARCH 19, 2019

Patrick Beury, Michael Appel, and Michelle Appel ("Appellants") appeal from the orphans' court's order admitting to probate a handwritten document signed by Blanche Beury ("Decedent") as her valid will.  Upon review, we affirm.

The facts are as follows:

Decedent was an 82 year old widow.  For a number of months, Decedent had been suffering from liver cancer.

Decedent had three adult children: Patrick, Richard, and Patricia. Patricia died many years ago, but had two children, Michael and Michelle Appel, who, at the time of these proceedings, were adults.  Decedent's son Richard lived with her and had a car detailing shop on the property behind the house.

_____
*   Retired Senior Judge assigned to the Superior Court.

Near the end of March 2015, Decedent spoke with an attorney by phone about transferring her home to Richard. However, because Decedent was having a serious surgical procedure the next day and did not know when they could meet, the attorney suggested creating a will instead. She explained how Decedent would create it herself, given the circumstances, and what language to include. While on the phone with the attorney, Decedent handwrote a will. According to the attorney, Decedent was clearheaded and understood what she told her. After she hung up with the attorney, Decedent ripped up what she had written. Decedent then handwrote the following:

> I, Blanche, intend to leave my house at 455 Montgomery Avenue to my son Richard Beury.
>
> (s) Blanche Beury

Not long thereafter, on June 4, 2015, Decedent died. She had no formal will.

After Decedent's death, Richard sought probate of her handwritten document as her last will and testament. The hearing officer in the Department of Court Records, Wills/Orphans' Court, by order dated November 24, 2015, denied Richard's petition for probate, concluding that the handwritten document did not constitute a will. Richard appealed to the orphans' court.

The orphans' court held a hearing, and issued a memorandum opinion.[1] The orphans' court later issued a final order, granting Richard's appeal and directing that the document offered as Decedent's last will and testament be admitted to probate and filed of record.

Appellants timely filed a notice of appeal to this Court on March 22, 2018. Both the orphans' court and the parties complied with Pa.R.A.P. 1925.

On appeal, Appellants raise the following issue:

1. Whether the orphans' court abused its discretion either in an error or misapplication of the law [when it determined] that the proffered writing constituted the will of Decedent?

See Appellants' Brief at 4.

Our standard of review in such matters is narrow:

In a will contest, the hearing judge determines the credibility of the witnesses. The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there is an error of law or abuse of discretion. Estate of Reichel, 400 A.2d 1268, 1269–70 (1979). Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside. Estate of Masciantonio, 141 A.2d 362, 365 (1958).

Estate of Tyler, 80 A.3d 797, 802 (Pa. Super. 2013) (quoting In re Bosley, 26 A.3d 1104, 1107 (Pa. Super. 2011)).

_____

[1] Appellants previously appealed to this Court from the orphans' court's opinion. However, because it was not a final order, we quashed the appeal. See In Re Estate of Blanche Beury, 1921 WDA 2016, order (April 3, 2017).

Appellants contend that the document written by Decedent specifically did not include the words "last will and testament", "give", "devise", or "bequeath", despite the attorney telling her to include these words so that she could write a will. According to Appellants, because Decedent deliberately eliminated this language when rewriting the document, after specifically being advised to use those words, it is clear that she did not intend to make a will and have her house pass to Richard upon her death. Consequently, they claim the orphans' court erred in concluding that the document was testamentary and in admitting the handwritten document to probate. Appellant's Brief at 10, 31.

The orphans' court concluded that the handwritten document was testamentary. Orphan's Court Opinion, 11/21/16, at 3a. We agree.

The law regarding wills is well settled.

> [T]he general rule [is] that the testator's intent, if it is not unlawful, must prevail. Moreover, the testator's intention must be ascertained from the language and scheme of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but is what is the meaning of his words.

Estate of Shelly, 950 A.2d 1021, 1025 (Pa. Super. 2008) (internal citations omitted, emphasis in the original), appeal denied, 962 A.2d 1198 (Pa. 2008).

> Our determination focuses on whether we are faced with a document that is testamentary as a matter of law, nontestamentary as a matter of law, or ambiguous, in which case extrinsic evidence is to be considered to resolve the ambiguity.

Id. at 1026 (citation omitted).

In reviewing the document offered for probate, the orphans' court acknowledged the well settled principle that "[i]f the instrument is in writing and signed by the decedent at the end thereof and is an otherwise legal declaration of his intention which he wills to be performed after his death, it must be given effect as a will or codicil, as the case may be." Kauffman's Estate, 76 A.2d 414, 416 (Pa. 1950); Hengen's Estate, 12 A.2d 119, 120 (Pa. 1940).

Looking only at the four corners of the handwritten document, without considering any extrinsic evidence, we conclude that the language set forth therein, clearly supports the orphans' court's determination that the document reflects a testamentary disposition.

Consistent with the legal principle articulated in Kauffman's Estate for establishing that a document is testamentary, Decedent handwrote the document offered for probate, and signed it at the end of its text.

Additionally, the document set forth a declaration as to what Decedent wanted to happen with her house. In writing the document, Decedent used the word "intend". Generally, "intend" is defined as "to have in mind . . . something to be done or brought about; plan".[2] Decedent wanted Richard to have the house.

_____

[2] See https://dictionary.com/browse/intend (last visited on 2/14/19).

Moreover, Decedent indicated in the document when she wanted this to happen. Decedent used the word "leave", which connotes a permanent departure or to "have remaining behind after going . . . ."[3] Thus, by using the word "leave", it is evident that Decedent intended the disposition of her house to occur after her death.

The interpretation that the document was testamentary is further supported by the fact that at the time of this writing, Decedent was seriously ill and had impending surgery. Our Supreme Court has held that where a decedent was "quite ill" the words "'I want Mamie to have my House' necessarily must be taken to refer to a time in the future, to wit, after the death of the testatrix." Hengen's Estate, 12 A.2d at 120.

Moreover, contrary to Appellants' argument, "[a] writing need not assume any particular form or be couched in language technically appropriate to its testamentary character to take effect as a will or a codicil." Id. "If a testator intends to make a testamentary gift, it can be done in many ways and in many forms, and the intent, as we have often said, is the pole-star." Estate of Shelly, 950 A.2d at 1026 (citation omitted). Thus, the words "last will and testament", "give", "devise", and/or "bequeath" were not necessary to effectuate Decedent's testamentary intent, as Appellants argue. We therefore conclude that the orphans' court did not commit an error of law or

_____

[3] See https://dictionary.com/browse/leave (last visited on 2/14/19).

abuse of discretion when it determined that the document offered for probate in this matter was testamentary.

To the extent that the orphans' court considered the document to be ambiguous, and extrinsic evidence was necessary to clarify the nature or intent of the writing, the testimony, as credited by the orphans' court, also supports the conclusion that the document offered for probate in this case was testamentary.[4]

Decedent wrote the document based upon the attorney's recommendation to do a will after she learned that Decedent was having surgery the next day and did not know when they would be able to meet to do a deed transfer. Although Decedent wrote the document without using certain words, despite the attorney's advice to include them, Decedent's elimination of those words does not show a contrary intent, as Appellants argue. If Decedent had intended a nontestamentary disposition, such as a deed transfer, Decedent simply could have waited until after the surgery to make the transfer, making the writing unnecessary, as was initially discussed.

_____

[4] As is evident from our discussion above, extrinsic evidence was not needed to discern the nature of Decedent's handwritten document. "Generally, extrinsic evidence of testamentary intent is inadmissible where a writing is clearly a will; it is only where there is a real doubt or real ambiguity as to the character of the writing and the intent of the decedent as expressed therein, that extrinsic evidence will be admissible to show the intent of the decedent. In other words if the paper sought to be probated is free from ambiguity on its face, extrinsic evidence as to the maker's intention is inadmissible." In re Moore's Estate, 277 A.2d 825, 826 (Pa. 1971) (citations omitted). However, neither party raised an objection or issue regarding its admission in this case.

Instead, however, as the orphan's court observed, "Decedent made the decision to write a will over choosing a joint tenant right of survivorship because she was having liver surgery the next day." Orphans' Court Opinion, 11/21/16, at 4a. The orphans' court also noted that, at the time, Decedent was "clearheaded" and able to understand what the lawyer had advised her. Id.

Moreover, the evidence supported Decedent's testamentary wish to give Richard the house as articulated in her handwritten document. The orphans' court explained:

> [T]he testimony supported that [Decedent] wished to give the home to her son for several reasons. [Richard] resided with [Decedent] and had done so his entire fifty years of life. [Richard] testified that [Decedent] wanted to give him the house because he had "looked out" and "took care" of [Decedent]. In addition, she didn't want [Richard] to lose his auto-detailing business that was also located on the property, behind the residence.

Orphans' Court Opinion, 11/21/16, at 3-4.

Based on the foregoing, we find that the orphans' court did not commit an error of law or abuse its discretion when it determined that the handwritten document offered for probate was testamentary and constituted the last will and testament of Decedent. The orphans' court therefore properly admitted it to probate. Thus, we affirm the orphans' court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/19/2019</u>