424 A.2d 1290

**In re ESTATE of Frances Lucy LAURIN a/k/a Frances Lucy Olsen a/k/a Frances L. Tryall a/k/a Frances Tryall Olsen, Deceased.**

**Appeal of Susan L. FLEMING, Individually, Richard E. Fleming, and Susan L. Fleming, Guardian of Lori M. Fleming.**

Supreme Court of Pennsylvania.

Submitted Sept. 29, 1980.

Decided Feb. 4, 1981.

478

Archie V. Diveglia, Harrisburg, for appellant.
Jack Palkovitz, McKeesport, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

This is an appeal by the grandchildren of Frances Lucy Laurin ("testatrix"), from a final decree of the Orphans' Court Division of the Court of Common Pleas of Allegheny County dismissing their exceptions to the probate of a writing dated March 16, 1978.[1]

The specific issue before us is whether the court below correctly determined that a validly executed informal writing using only non-testamentary language in the present tense was the last will and testament of the testatrix. Because the record adequately supports the conclusion that testatrix intended the writing to be testamentary, we affirm.

On November 6, 1974, testatrix executed a formal will in which she left her entire estate equally to her two daughters, Beatrice L. Sprowls ("Beatrice")[2] and Virginia F. Fleming ("Virginia"). In the event that one or both of the primary beneficiaries predeceased testatrix, the will provided for distribution of the estate to her surviving grandchildren per stirpes.[3]

1. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, *as amended* April 28, 1978, P.L. 202, No. 53, § 10(4). 42 Pa.C.S.A. § 722(3).

2. Beatrice L. Sprowls is now Beatrice L. Sprowls Denk.

3. The will read in pertinent part:
    I give, devise and bequeath all of my estate, be it real, personal or mixed, whatsoever and wheresoever the same may be situate at the time of my decease and all property over which I may then have the power of appointment unexercised, even though specific reference is not made thereto, unto my two children, BEATRICE L. SPROWLS and VIRGINIA F. FLEMING, to be divided equally between them, *per stirpes* and not per capita, *so that if either of my children shall predecease me, leaving a child or children her surviving, then such child or children shall take the share that such deceased child of mine would have taken had she survived me,* but in default of such child or children, then all to the survivor of my two children. (Emphasis supplied).

On September 11, 1976, Virginia predeceased testatrix, leaving as survivors her three children, Susan L. Fleming, Richard E. Fleming, and Lori M. Fleming, appellants herein. Following the death of testatrix on April 22, 1978, the Register of Wills ("Register") admitted the November 6, 1974 will to probate. However, a later inconsistent writing, dated March 16, 1978 and signed at the end by testatrix, was discovered among her personal effects.[4] Therein, she gave "all properties and personal belongings" to her daughter, Beatrice. Appellants, beneficiaries under the prior will, appealed from the Register's admission of this informal document to probate, challenging its testamentary character. After a hearing before the Orphans' Court, their appeal was dismissed. The court *en banc*, concluding that the document was testamentary on its face, thereafter dismissed appellants' exceptions, and this appeal followed.

The March 16, 1978 writing provides in its entirety:

March 16, 1978

I, Frances L. Laurin, give all properties and personal belongings to my daughter Beatrice L. Sprowls Denk.

/s/ Frances L. Laurin

The circumstances surrounding the document here in question may be stated briefly. At the time of its preparation, testatrix was 73 years of age and in poor health.[5] She lived with and was cared for by Beatrice for several months prior to her death. Occasionally, a neighbor, Janet Brian ("Janet"), also cared for her. Janet testified that on one such occasion, testatrix declared that she had a great deal of property, "that she had a lot to take care of with the death of her daughter [and] with Betty's [Beatrice's] remarriage,"

4. The writing undisputedly was signed at the end by testatrix in accordance with Section 2502 of the Probate, Estates, and Fiduciaries Code, Act of June 30, 1972, P.L. 508, No. 164, § 2, *as amended*, December 10, 1974, P.L. 867, No. 293, § 6. 20 Pa.C.S.A. § 2502.

5. Testatrix had been in and out of the hospital during the several months prior to her death, and was discharged on March 8, 1978, just eight days before the preparation of the document in question.

and that she wanted everything to go to Beatrice.[6] She also expressed a wish to see a lawyer in order to attend to these matters. Although Janet typed the contested writing for testatrix, she did not witness its execution. Beatrice first learned of the writing only after testatrix' death when informed of its existence by Janet.

Appellants challenge the testamentary character of the March 16, 1978 writing, contending that the use of non-testamentary language in the present tense renders it ambiguous, and that the court below erred in failing to consider extrinsic evidence to resolve the ambiguity. They argue further that consideration of such evidence would show that testatrix merely intended to make either a present gift or a memorandum to her attorney.[7]

In *Kauffman's Will*, 365 Pa. 555, 558, 76 A.2d 414, 417 (1950), this Court adopted guidelines to be followed where the testamentary character of a writing is challenged:[8]

In all cases of this kind where a paper is proposed for probate and its testamentary character is denied, it becomes the duty of the Court in the first instance to examine the paper, its form and its language, and therefrom determine as a matter of law whether or not it shows testamentary intent with reasonable certainty. If testamentary intent is satisfactorily revealed from such an examination by the Court, the paper should be probated as a will.

On the other hand, if, from such examination, the paper is shown not to be a testamentary disposition, but is shown to be a document of another type, then it is not to

6. Beatrice had remarried sometime after the execution of the 1974 will.

7. Appellants do not here challenge testatrix' testamentary capacity, nor do they raise any issue of undue influence, fraud or forgery. They contend only that the writing was not testamentary in language or intent.

8. The writing there in dispute provided:
   "dear bill
   i want you to have farm
                    /s/  Annie  Kauffman."

be probated as a will. But, if, from such an examination, the Court should determine that a real doubt or real ambiguity exists, so that the paper offered for probate might or might not be testamentary, depending upon circumstances, then it has been held on numerous occasions by the Appellate Courts that the document presents an ambiguity which will permit the use of extrinsic evidence in aid of resolving the uncertain character of the paper. (Citations omitted).

Although we found the language "i want you to have farm" to be ambiguous, we then considered the extrinsic evidence and concluded that it was in fact intended to be testamentary.[9]

An informal writing using present tense language similar to that now before us recently was held unambiguously testamentary in *Estate of Logan*, 489 Pa. 29, 413 A.2d 681 (1980). The disputed writing there provided:

"I here buy sent [sic] my hand and seal to any one enterseted [sic] to my estate, that I give all my monies & estates to my sister Lillian Grundman *nee* Logan as benefecesitay [sic] to all an [sic] any.

Your truly

as ever

George T. Logan

The Same-Lillian Grundman

S.S. No. 198–03–7882 G.L."

We found no need to consider extrinsic evidence in *Logan* because use of the words "estate" and "beneficiary", along with the decedent's manifest intent to divest himself of all his belongings, clearly evidenced a testamentary disposition.

Testatrix' March 16, 1978 writing, however, contains no language indicating that it was drafted in contemplation of death or that it was intended to be testamentary. Use of

---

**9.** Decedent in *Kauffman's Will* had suffered from a prolonged illness prior to preparation of the writing. Moreover, we noted that since there had been no delivery, the writing was legally inoperative as an *inter vivos* gift. See *Estate of Chiara*, 467 Pa. 586, 359 A.2d 756 (1976).

the word "give" alone, absent other language indicative of a decedent's intent to make either an *inter vivos* gift or a testamentary disposition, renders the writing ambiguous and necessitates consideration of extrinsic factors.[10]

While we do not agree with the court *en banc* that the March 16, 1978, writing is testamentary on its face, we nevertheless conclude, after reviewing the surrounding circumstances, that the court correctly held the writing to be testamentary.[11] It was prepared by testatrix while she was ill, only one month before her death and just eight days after she had been discharged from the hospital. Use of the language "all properties and personal belongings" demonstrates that testatrix intended to dispose of all of her worldly possessions. As she was living with Beatrice prior to the preparation of the writing, testatrix could have made delivery had she intended to make an *inter vivos* gift. Instead, she placed the writing, properly signed at the end, in a drawer, leaving Beatrice unaware of its existence until after her death.[12]

10. The word "give" was used in *Tozer v. Jackson*, 164 Pa. 373, 30 A. 400 (1894), where the disputed language was, in effect, virtually identical to that now before us:

"High [sic] James Rogers do give to John Jackson Sr. my property known as Pen argyl Hotel and the land adjoining in Pen argyl in Northampton County P.A. /s/ James Rogers."

Although the writing was found "testamentary on its face", it is apparent from the opinion that the Court supported its conclusion with what now would be regarded as "extrinsic" evidence, rather than the independently testamentary character of the language. The decedent, who committed suicide, left the writing where it would be discovered immediately by those who found his body. As the disposition was one of real estate, and as the document had never been delivered to the named beneficiary, the Court further noted that it could not have been operative as an *inter vivos* transfer.

11. It is apparent that, despite its conclusion that the writing was testamentary on its face, the court *en banc* did not disregard extrinsic evidence, for it went on to note alternatively that consideration of extrinsic evidence would have "required the same conclusion." Affirmance is therefore appropriate. See *McAleer v. Iceland Products*, 475 Pa. 610, 381 A.2d 441 (1977).

12. For other cases where this Court has found a testamentary disposition by considering extrinsic evidence to resolve an ambiguity created by present tense non-testamentary language, *see Hengen's*

Thus, although we agree with appellants that the March 16, 1978 writing is not testamentary on its face, we nevertheless affirm the decree of the court *en banc* because the record adequately supports the conclusion that testatrix intended it to be her last will and testament.

Accordingly, the decree of the court below is affirmed with each party to bear own costs.

ROBERTS, J., filed a dissenting opinion in which LARSEN, J., joined.

ROBERTS, Justice, dissenting.

I agree with the majority that the orphans' court erred in holding testamentary on its face the brief statement composed and typewritten by an acquaintance of testatrix and signed later by testatrix with no witnesses present. However, I cannot agree with the majority that "consideration of extrinsic evidence" requires the conclusion that testatrix intended the disputed writing to serve as her last will and testament and thus to supersede the formal will executed by testatrix with the aid of her attorney in 1974 and admitted to probate a week after her death. Because neither the character of the writing itself nor the extrinsic evidence supports the decree of the orphans' court, the decree should be vacated and the case remanded for an evidentiary hearing. Thus I dissent.

The only reference to extrinsic evidence by the orphans' court in support of its result is the comment: "If the language had been ambiguous on its face, the court might

*Estate*, 337 Pa. 547, 12 A.2d 119 (1940) (where we held testamentary a contested writing which read: "I want Mamie to have my House 544 George Street /s/M.L. Henge" after considering the fact that the decedent had been ill for a year and a half prior to the execution of the writing and the fact that since there had been no delivery, the document was ineffective as an *inter vivos* gift); *Estate of Sedmak*, 467 Pa. 379, 357 A.2d 142 (1976) (where we found testamentary a writing which read: "My Brother Mil Please see that Zella Portenar receives $5000 from my Savings account it is in the Western Saving Bank [sic] /s/ George A. Sedmak or Alexander Sedmak" after considering the fact that if the decedent had intended an *inter vivos* gift he would have made delivery of the passbook).

have considered the extrinsic evidence given by [Janet] Brian [the lay scrivener] which required the same conclusion." From this statement it is difficult to tell what consideration, if any, the court gave to this evidence, which consisted of the deposition testimony of the only witness to the making of this disputed writing.

In fact, the testimony of Janet Brian provides considerable support for appellants' contention that testatrix intended to prepare not a will but simply a memorandum for her attorney, a memorandum which she never sent.[1] According to Brian, on March 16, 1978, Brian had agreed to care for testatrix during the evening while testatrix's daughter, appellee Beatrice Denk, was out of the house. In the course of a conversation between testatrix and Brian, testatrix stated that she had "a lot to take care of" and expressed a desire that "everything should be Betty's."[2] Brian remembered asking testatrix, " 'Well, do you want me to type up something to send to the lawyer?' because she [decedent] mentioned the lawyer, she never mentioned the name." Testatrix replied, " 'Okay.' " Brian then went upstairs to her own apartment and typed the writing at issue, entirely in her own words. Her choice of language was based on her perception of "how you would send something to a lawyer." She then gave the writing to testatrix, who received it without comment and without signing it in Brian's presence. At no time did either Brian or decedent mention the word "will."[3]

1. Testatrix placed the writing in a "card box" and never mentioned it to anyone. It is at least as reasonable to conclude that testatrix, an elderly and volatile woman, subsequently changed her mind about having her 1974 will altered as it is to conclude that she intended these few lines to serve as her last will and testament. See n.2 and text, infra.

2. According to the deposition testimony of Sharon Duey, daughter of appellee, testatrix frequently contemplated making changes in her 1974 will and discussed disinheriting nearly all of her family at one time or another. Record at 67a–70a, 81a.

3. Record at 27a–36a.

Testatrix and Brian never discussed the writing again. Indeed, testatrix appears never to have mentioned the writing to anyone, for her 1974 will, which divided her property equally between appellee and the children of testatrix's other daughter,[4] was admitted to probate without objection on April 27, 1978, five days after testatrix's death. The writing remained undiscovered in a "card box" on appellee's coffee table until some time in the summer of 1978 when Brian casually told appellee of the "favor" she had performed for testatrix: "then I mentioned that I had typed this thing, you know. I didn't even know it was a will or anything. I just thought I was doing the woman a favor. If I thought it was, I never would have gotten involved."[5]

This, then, is the extrinsic evidence which the orphans' court "might have considered" as an alternative ground for its result, and which the majority deems an "appropriate" basis for affirmance. While it is certainly true that this Court may affirm the decision of the orphans' court if the result is correct on any ground, *Mazer v. Williams Brothers Co.*, 461 Pa. 587, 337 A.2d 559 (1975), it is manifest that the testimony of Janet Brian does not provide such a ground.

The additional extrinsic evidence upon which the majority relies as support for its erroneous result is equally dubious. The majority observes that testatrix "prepared" the writing "while she was ill, only one month before her death and just eight days after she had been discharged from the hospital." Majority opinion at 1293. From this "evidence," the majority apparently infers that the writing was "prepared" in contemplation of death. What the majority fails to note, however, is that testatrix had been hospitalized for a foot ailment, serious and painful but hardly terminal, and that she died of pneumonia. Moreover, after her discharge from the hospital, testatrix constantly spoke of her desire to

4. Virginia Fleming, who predeceased testatrix on September 11, 1976. In the event that a daughter predeceased testatrix, the will provides for distribution of the daughter's share to her issue.

5. Record at 45a.

return from Harrisburg, where she was living with appellee, to her home in Pittsburgh.[6]  Indeed, a week before her death she informed her granddaughter Sharon Duey, appellee's daughter, that "[s]he had things she wanted to do [with her will] when she got back to Pittsburgh."[7]

Deponent Duey's above-quoted recollection not only suggests that testatrix did not view her death as imminent but also provides additional support for appellants' contention that testatrix intended the writing simply as a memorandum to her attorney, a contention that the majority has overlooked.  The majority views testatrix's failure to effect delivery of the writing to her daughter as evidence that testatrix intended the writing to function as a will rather than as an *inter vivos* gift of all her possessions.[8]  Here, however, as distinguished from the cases cited by the majority, appellants do not argue that the writing represents a failed *inter vivos* conveyance.  The issue is whether testatrix intended the writing to act as a revocation of the detailed 1974 will in the possession of her attorney or merely as an instruction to him to prepare a new will.

In this light, it is instructive to consider the observation of this Court in *Forquer's Estate*, 216 Pa. 331, 66 A. 92 (1907):

> "Without doubt . . . the careful preservation of a regularly executed will up to the time of death is of importance in the construction of a subsequent paper of doubtful testamentary import, an instance of which is found in *Jacoby's Estate*, 190 Pa. 382 [42 A. 1026 (1899)]."

Id., 216 Pa. at 339, 66 A. at 96; see also *Richards Will*, 439 Pa. 5, 264 A.2d 658 (1970); *Snyder Estate*, 58 D. & C.2d 541

6.  Record at 112a.

7.  Record at 69a.

8.  The majority states: "Instead [of effecting delivery], she placed the writing, properly signed at the end, in a drawer, leaving Beatrice [appellee] unaware of its existence until after her death."  Majority opinion at 1293–94 (footnote omitted).  Needless to say, the end of any kind of writing is the logical and "proper" place for a signature.

(1972). Here, testatrix's "regularly executed" 1974 will had been carefully preserved by her attorney and was admitted to probate soon after her death. Although she could easily have done so, testatrix made no attempt to instruct her attorney, either by telephone or letter, with regard to the alteration or destruction of that will. Testatrix was not, like the decedent in *Kauffman's Will*, 365 Pa. 555, 76 A.2d 414 (1950), making a hurried attempt to dispose of property which would otherwise pass by intestacy. Rather, she was contemplating the alteration of a carefully considered and previously executed scheme of distribution. In the circumstances, there is clearly no compelling need to give testamentary effect to this brief writing of dubious testamentary intent, especially where the evidence suggests that testatrix may well have changed her mind. Indeed, to hold on the basis of this record, as the majority does, that an informal writing to which testatrix never referred as her will supersedes her formally executed and probated 1974 will is manifest error.

Nonetheless, the proper remedy for this error is not for this Court to find, on this record, that testatrix's probated 1974 will is her final expression of testamentary intent. The erroneous holding of the orphans' court that the informal writing is testamentary on its face has thus far denied appellee, the proponent of the disputed document, the opportunity to prove that testatrix intended the later writing to serve as her last will and testament. Therefore, the case should be remanded for an evidentiary hearing to permit the orphans' court to consider what it said it "might have considered," as well as any other evidence which may shed light upon testatrix's true intentions.

LARSEN, J., joins this dissenting opinion.